In the

# United States Court of Appeals

### For the Seventh Circuit

———————

No. 07-1185

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MELVIN D. SPELLS,

*Defendant-Appellant.*

———————

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division
No. 06 CR 75—**Sarah Evans Barker**, *Judge.*

———————

ARGUED APRIL 18, 2008—DECIDED AUGUST 8, 2008

———————

Before BAUER, FLAUM, and KANNE, *Circuit Judges.*

FLAUM, *Circuit Judge.* Defendant Melvin Spells was convicted by a jury on three counts stemming from a robbery of a Papa Johns Pizza restaurant. While Spells challenges the sufficiency of the evidence on appeal, the main thrust of this appeal involves Spells's sentencing. The district court, in sentencing Spells, found that he was an armed career criminal under 18 U.S.C. § 924(e)(1), based on what it deemed to be prior "violent felonies," as well as a career offender under U.S.S.G. § 4B1.1. Spells was then sentenced to 346 months' imprisonment—262 months, concurrent, on Counts 1 and 3, with a consecutive

sentence of 84 months on Count 2. In addition to chal-
lenging the sufficiency of the evidence, Spells appeals the
court's findings that he was an armed career criminal and
a career offender, as well its imposition of a 262 month
sentence on Count 1, when the statutory maximum sen-
tence on that Count was 240 months. For the following
reasons, we affirm the district court's judgment on all
grounds, except for the 262 month sentence on Count 1,
and order a limited remand for the district court to cor-
rect this error.

## I. Background

On May 9, 2006, a three count indictment was filed
against Spells with respect to an alleged robbery of a Papa
Johns Pizza on June 13, 2005. The indictment charged
Spells with: (1) robbery affecting interstate commerce in
violation of 18 U.S.C. § 1951(a); (2) brandishing a fire-
arm during and in relation to a crime of violence in viola-
tion of 18 U.S.C. § 924(c)(1)(A)(ii); and (3) being a felon in
possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1)
and 924(e). A two day jury trial then commenced on
September 25, 2006.

At trial, the jury heard testimony from Larry Jenkins,
the employee working at Papa Johns on the day of the
robbery. Jenkins testified that at 5:00 PM, a customer
came in, wearing a blue shirt and baseball cap, and started
talking about sports with him for at least five minutes
before ordering a Coke. Jenkins placed the customer's
money in the register and then, when he lifted his head,
found that the customer was pointing a black handgun at
his chest. The customer demanded the money from the
register, but was not satisfied with what Jenkins proceeded

to give him. The customer, after demanding more money, put his gun down and reached into the drawer himself. Then the customer ran out the door into a brown colored van, at which point Jenkins called the police. At trial, Jenkins identified the customer as Spells.

A second Papa Johns employee, Gregory Fleetwood, was also present during the robbery and testified at Spells's trial. At the time of the robbery, Fleetwood was approximately fifteen feet from the counter, cutting pizzas. Fleetwood's testimony largely corroborated Jenkins account of the events and description of the robber, although Fleetwood believed the gun was silver in color and recalled the entire time the robber was in the restaurant as lasting only about two minutes.

Deputy Paul Ziliak then testified that after hearing a dispatch about the robbery, he spotted a brown van in the parking lot of the strip mall where the robbery occurred and activated his lights and siren. The driver of the van, who Deputy Ziliak identified at trial as Spells, did not stop the van, but instead exited the vehicle shirtless while it was still moving, and was almost struck by the Deputy's squad car as he ran away. John Mark Archer, a canine officer, testified to receiving a dispatch put out by Ziliak when Spells had fled the van, and apprehending Spells shortly thereafter. Ziliak then testified to what was found in the van—a shirt matching the description given by Jenkins and $107 in cash. Later that evening, when Detective Scott Scheid searched the van, he testified that he found a loaded 9 millimeter handgun underneath the floor mat between the two front seats and live rounds of ammunition in the vehicle.

On the second day of trial, the jury unanimously found Spells guilty on all three counts. The case then proceeded

to sentencing on January 17, 2007. The Presentence Investigation Report ("PSR") and accompanying sentencing recommendation advised that Spells be sentenced to 362 months' imprisonment. As is relevant to this appeal, the PSR placed Spells's statutory minimum sentence under Count 3 (felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1)) at 15 years, *see* 18 U.S.C. § 924(e)(1), rather than a statutory maximum sentence of 10 years, *see* 18 U.S.C. § 924(a)(2), on the basis of what it deemed to be three prior violent felony convictions under the Armed Career Criminals Act. According to the PSR, these prior convictions also translated to sentencing enhancements under the Guidelines. The PSR recommended that Spells's offense level be increased from 24 to 32 because, by having at least two prior violent felony convictions, he was a "career offender" under U.S.S.G. § 4B1.1. Additionally, the PSR's determination that Spells was an "armed career criminal" resulted in Spells's offense level being increased to 34, under U.S.S.G. § 4B1.4. Spells's designation as a career offender and armed career criminal also resulted in his criminal history category being placed at VI.

The three prior offenses deemed to be violent felonies in the PSR had been prosecuted in Indiana state court in 2001. The first conviction was for Resisting Law Enforcement, a Class D felony. The PSR relied upon a probable cause affidavit in order to provide details of the crime—that Spells sped away from law enforcement after he was spotted driving without a safety belt and was apprehended after he left the vehicle on foot. Both of the other felonies were robbery convictions prosecuted jointly. One of the robberies occurred on March 26, 2001, and the other occurred on April 10, 2001.

At the sentencing hearing, Spells raised two objections to the PSR. He first objected to his designation as an "armed

career criminal," claiming there was no grand jury determination as to whether his prior convictions arose from separate occasions under 18 U.S.C. § 924(e), but this objection was overruled by the court. Spells's second objection involved a point of clarification on the resisting law enforcement conviction, and was dropped by Defendant based on the probation officer's response. Having quickly dismissed Spells's objections, the district court then, with respect to the Guidelines, "adopt[ed] [the PSR's] formulation as [his] own." The court then went on to explain why Spells's criminal history and total offense level under the Guidelines had been raised. The court detailed that Spells's criminal history category was increased from IV to VI based on his designation as a "career offender" and an "armed career criminal." When discussing the "career offender" designation, the district court asked Spells if he understood what that designation meant and if that had been discussed with his attorney, to which Spells responded, "Yes." Similarly, when discussing Spells's designation as an "armed career criminal," the district court stated to Spells, "So it's because of your serious prior convictions that you've wound up in this very high criminal history category. Do you understand that?" Spells responded, "Yes." The court then proceeded to look at the § 3553(a) sentencing factors, and ultimately sentenced Spells to a within Guidelines sentence of 262 months, concurrent on Counts 1 and 3, and 84 months on Count 2, running consecutively. This brought Spells's total sentence to 346 months.

The next week, Spells filed a Motion to Correct Sentence. In the motion, he argued that the district court had erred in sentencing him to 262 months, concurrent on Counts 1 and 3, when the statutory maximum sentence for Count 1

under 18 U.S.C. § 1951(a) was 20 years, or 240 months. The district court denied the motion, adopting the Government's reasoning in its response, which, referencing U.S.S.G. § 5G1.2(d), claimed that no sentencing error had occurred because Counts 1 and 3 were imposed consecutively. This appeal followed.

## II. Discussion

The focus of Spells's appeal concerns his sentence, where he makes the following claims: (1) that the district court improperly characterized his prior conviction for resisting law enforcement as a "violent felony" for purposes of the Armed Career Criminal Act; (2) that he was improperly designated a "career offender" because his two prior robbery convictions should only be counted as one conviction under U.S.S.G. § 4A1.2; and (3) that the district court erred in sentencing him to a sentence exceeding the statutory maximum on Count 1. Before addressing these sentencing issues, however, we first turn our attention to Spells's challenge to the sufficiency of the evidence.

### A. Sufficiency of the Evidence

Spells faces a "'nearly insurmountable' hurdle" in challenging the sufficiency of the evidence for his conviction. *United States v. Jong Hi Bek*, 493 F.3d 790, 798 (7th Cir. 2007) (quoting *United States v. Orozco-Vasquez*, 469 F.3d 1101, 1106 (7th Cir. 2006)). This is because, in order to succeed on this claim, Spells must show that "after viewing the evidence in the light most favorable to the prosecution, [no] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United*

*States v. Stevens*, 453 F.3d 963, 965 (7th Cir. 2006) (quoting *United States v. Curtis*, 324 F.3d 501, 505 (7th Cir. 2003)). In conducting this review, we will not "weigh the evidence or second-guess the jury's credibility determinations." *Id.* (quoting *United States v. Gardner,* 238 F.3d 878, 879 (7th Cir. 2001)).

In appealing this issue, Spells briefly mentions the disparity between Jenkins's and Fleetwood's testimony concerning the length of time the "customer" was in the restaurant, whether a conversation between Jenkins and the "customer" preceded the robbery, and a dispute as to whether the gun was black or silver. The central piece of evidence, however, on which Spells rests his claim, is that in the top front of his mouth, he sports six permanent gold teeth. Spells points out that Jenkins made no mention of this distinctive feature during either his initial report of the robbery or at trial, and argues that this fact, when coupled with other contradictions in Jenkins's testimony, undermines his eye-witness identification of Spells. Despite its creativity, this "gold tooth" theory fails, since it ultimately does little more than ask this Court to revisit the jury's credibility determinations regarding Jenkins's testimony, something this Court will not do. Furthermore, the Government's case against Spells did not rest solely on Jenkins's testimony. Fleetwood corroborated much of Jenkins's testimony, and the search of Spells's van turned up further evidence of the crime. For these reasons, Spells's sufficiency of the evidence challenge fails.

## B.  Armed Career Criminal

Spells's appeal is primarily focused on whether his prior conviction for resisting law enforcement constituted a

"violent felony," which led to his designation as an armed career criminal. It is first necessary, however, to determine whether we can properly hear this claim, since the issue was not raised before the district court. The Government argues that Spells has waived this claim, thus precluding review by this Court, while Spells contends that the issue has only been forfeited and is therefore still subject to review for plain error. *See United States v. Harris*, 230 F.3d 1054, 1058-59 (7th Cir. 2000) ("We review forfeited issues for plain error, . . . but we cannot review waived issues at all because a valid waiver leaves no error for us to correct on appeal."). Whether this claim has been waived or forfeited depends upon Defendant's intent before the lower court. "Waiver occurs when a defendant intentionally relinquishes a known right," while forfeiture, on the other hand, "comes about through neglect," and occurs when one fails to assert their rights in a timely manner. *United States v. Staples*, 202 F.3d 992, 995 (7th Cir. 2000).

When this claim was first appealed and briefed to this Court, the waiver/forfeiture distinction presented a close question, requiring this Court to determine whether Spells's failure to object could be seen as part of a sound strategic decision, and thus done intentionally. *Compare United States v. Brodie,* 507 F.3d 527, 532 (7th Cir. 2007) (waiver found to exist "where the defendant as well as counsel stated on the record that he had no further objections to the PSR and where counsel had sound reasons not to raise near-frivolous arguments to the sentencing judge"), *with United States v. James-Jaimes*, 406 F.3d 845, 847-49 (7th Cir. 2005) (forfeiture occurred when neither this Court, nor the Government, could conceive of a sound reason for failing to object to a 16-level enhancement, and

defense counsel's failure to raise the issue was deemed deficient). Two days before oral argument, however, the Supreme Court issued *Begay v. United States,* 128 S. Ct. 1581 (2008), which reformulated the proper standard for ascertaining whether a prior conviction constitutes a "violent felony" for purposes of the Armed Career Criminal Act. As this Court has previously stated, "a sentence founded on a clear error of law [is] appropriate for correction on review for plain error," in circumstances where the Supreme Court issues an applicable decision post-sentencing, but during a pending appeal. *United States v. Taylor*, 520 F.3d 746, 747 (7th Cir. 2008) (discussing the approach taken by this Court in *United States v. Paladino*, 401 F.3d 471, 481-84 (7th Cir. 2005), in response to the *Booker* decision, and applying the same approach in light of *Kimbrough v. United States*, 128 S. Ct. 558 (2007)). Accordingly, we will review Spells's designation as an armed career criminal in light of *Begay* for plain error, meaning the "error must be 'clear or obvious' and 'affect [the defendant's] substantial rights.'" *United States v. Alden*, 527 F.3d 653, 662 (7th Cir. 2008) (quoting *United States v. Schalk*, 515 F.3d 768, 776 (7th Cir. 2008)). "If there is plain error, this Court will reverse if it determines, in its discretion, that the error 'seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" *Id.* at 662-63 (quoting *United States v. Luepke*, 495 F.3d 443, 448 (7th Cir. 2007)).

Under the Armed Career Criminal Act, the statutory minimum sentence for a felon convicted of unlawfully possessing a firearm in violation of 18 U.S.C. § 922(g)(1) is increased to fifteen years if the convict has three prior convictions that qualify as "a violent felony or a serious drug offense." 18 U.S.C. § 924(e)(1); *compare with* 18 U.S.C.

§ 924(a)(2) (without "armed career criminal" designation, statutory maximum sentence for a violation of 18 U.S.C. § 922(g) is 10 years). The statute, in turn, defines a "violent felony" as:

> any crime punishable by imprisonment for a term exceeding one year, . . . that—
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*;

18 USCS § 924(e)(2)(B) (emphasis added). The issue before this Court is whether Spells's prior conviction in Indiana state court for Resisting Law Enforcement, a Class D felony, falls within the residual clause in § 924(e)(2)(B)(ii).

Before turning to the substance of whether Spells's prior conviction constituted a "violent felony," however, we first note the procedures courts are to follow in making this determination. In evaluating whether a crime constitutes a "violent felony," courts are instructed to examine "the crime of conviction, not the defendant's actual conduct or the details of the proceedings in state court." *United States v. Perkins*, 449 F.3d 794, 796 (7th Cir. 2006) (discussing *Shepard v. United States*, 544 U.S. 13 (2005) and *Taylor v. United States*, 495 U.S. 575 (1990)). While the Supreme Court has made clear that district courts "generally must use 'a formal categorical approach, looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions,'" *United States v. Mathews*, 453 F.3d 830, 833-34 (7th Cir. 2006) (quoting *Taylor*, 495 U.S. at 600) (citing *Shepard*, 544

U.S. at 16), the Court has allowed limited, additional materials to be consulted when a statute is "divisible," meaning that "a single statutory provision defines several different crimes." *Id.* at 833, n.7. The Supreme Court has held that the additional materials that may be consulted are limited to "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Id.* at 834 (quoting *Shepard*, 544 U.S. at 26). These additional documents, however, are to be consulted "[o]nly where the statutory elements and the content of the charging document do not resolve whether the crime of conviction constitutes a [violent felony]." *United States v. Newbern*, 479 F.3d 506, 508 (7th Cir. 2007) (determining whether a prior conviction was a "crime of violence" for "career offender" status under U.S.S.G. § 4B1.1).[1]

In this case, the Indiana statute for Resisting Law Enforcement that Spells was convicted under is a divisible statute. The law first provides the elements for the misdemeanor offense of resisting law enforcement:

---

[1] This Court treats "the career offender guideline and the Armed Career Criminal Act as 'interchangeable.'" *United States v. Rosas*, 401 F.3d 843, 845 (7th Cir. 2005). This analytical parallel applies not only to the substantive designation of a prior conviction as a "violent felony" or a "crime of violence," *see id.*, but also to the documents that may be utilized under *Shepard* in applying the formal categorical approach. *See United States v. McGee*, 408 F.3d 966, 988 (7th Cir. 2005) ("The Court's holding [in *Shepard*, with respect to the Armed Career Criminal Act,] applies with equal force to the guidelines' career offender provision.").

(a) A person who knowingly or intentionally:

    (1) forcibly resists, obstructs, or interferes with a law enforcement officer or a person assisting the officer while the officer is lawfully engaged in the execution of the officer's duties;

    (2) forcibly resists, obstructs, or interferes with the authorized service or execution of a civil or criminal process or order of a court; or

    (3) flees from a law enforcement officer after the officer has, by visible or audible means, including operation of the law enforcement officer's siren or emergency lights, identified himself or herself and ordered the person to stop;

commits resisting law enforcement, a Class A misdemeanor, except as provided in subsection (b).

IND. CODE § 35-44-3-3(a). The statute then goes on to provide the circumstances under which the offense becomes a Class D felony:

(b) The offense under subsection (a) is a:

    (1) Class D felony if:

        (A) the offense is described in subsection (a)(3) and the person uses a vehicle to commit the offense; or

        (B) while committing any offense described in subsection (a), the person draws or uses a deadly weapon, inflicts bodily injury on or otherwise causes bodily injury to another person, or operates a vehicle in a manner that creates a substantial risk of bodily injury to another person;

IND. CODE § 35-44-3-3(b). Spells claims that the district court failed to properly determine which subsection of this statute he was convicted under. Whether such a procedural violation occurred is only of significance if certain Class D felony violations of Indiana's Resisting Law Enforcement offense would not constitute a "violent felony." *See United States v. Thigpen*, 456 F.3d 766, 770 (7th Cir. 2006) (finding that although the PSR relied upon police reports and other non-*Shepard*-approved documents, no *Shepard* violation occurred since the prior felonies, on their face, constituted crimes of violence or controlled substance violations), *overruled on separate grounds in United States v. Sawyer*, 521 F.3d 792, 798-99 (7th Cir. 2008). Although Spells does not contest that a violation of the latter subsection, IND. CODE § 35-44-3-3(b)(1)(B), constitutes a "violent felony," he argues that fleeing a law enforcement officer in a vehicle, in violation of § 35-44-3-3(b)(1)(A), does not meet this standard, and accordingly that the district court committed both procedural and substantive errors.

The substantive question, then, for this Court to address, is whether fleeing a law enforcement officer, in a vehicle, qualifies as a "violent felony" under the residual clause found in 18 USCS § 924(e)(2)(B)(ii) of the Armed Career Criminal Act, which applies to:

> any crime punishable by imprisonment for a term exceeding one year, . . . that—
>
> . . .
>
> (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*;

18 USCS § 924(e)(2)(B) (emphasis added). In focusing upon this residual clause, the Supreme Court had previously instructed courts to determine "whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another." *James v. United States*, 127 S. Ct. 1586, 1597 (2007). This Court had addressed the question of whether fleeing an officer in a vehicle presented a "serious potential risk of injury to another" under Wisconsin law, which is similar to the Indiana law in question.[2] *United States v. Howze*, 343 F.3d 919, 921-22 (7th Cir. 2003). Although the Wisconsin statute required that the flight "interfere with or endanger the operation of the police vehicle, or the traffic officer or other vehicles or pedestrians," *id.* at 921 (quoting WIS. STAT. § 346.04(3)), something not found in the Indiana subsection at issue, this distinction played no part in this Court's analysis. Instead, this Court, relying upon a prior opinion holding that "escape from custody always is a 'crime of violence,'" concluded that, "[t]hus, if all escapes are violent crimes, all flights to avoid arrest

---

[2] In *Howze*, the defendant pled guilty to violating WIS. STAT. § 346.04(3), which read:

> No operator of a vehicle, after having received a visual or audible signal from a traffic officer, or marked police vehicle, shall knowingly flee or attempt to elude any traffic officer by willful or wanton disregard of such signal so as to interfere with or endanger the operation of the police vehicle, or the traffic officer or other vehicles or pedestrians, nor shall the operator increase the speed of the operator's vehicle or extinguish the lights of the vehicle in an attempt to elude or flee.

*United States v. Howze*, 343 F.3d 919, 921 (7th Cir. 2003).

must be violent crimes." *Id.* at 921-22 (citing *United States v. Bryant*, 310 F.3d 550 (7th Cir. 2002)).

In *Howze*, this Court focused its inquiry on the "serious potential risk of physical injury to another," characterizing the *Bryant* decision as reflecting a conclusion that escape from custody "holds the potential for violence during attempted recaptures," and observing with respect to flight in a vehicle, that "[c]ollisions between fleeing vehicles and pedestrians or others who get in the way are common." *Id.* The reasoning in *Howze*, particularly when coupled with *Bryant's* holding that "every escape involves 'a serious potential risk of physical injury to another,'" *Bryant*, 310 F.3d at 554, would seemingly compel this Court to also find that fleeing an officer, in a vehicle, under Indiana law was a "violent felony." The Supreme Court, however, two days before oral argument, issued *Begay v. United States,* which modified the analytical framework for determining which crimes fall within § 924(e)(2)(B)(ii)'s residual clause.

At issue in *Begay* was whether New Mexico's DUI statute, which made it "unlawful for a person who is under the influence of intoxicating liquor to drive a vehicle within this state," N.M. STAT. § 66-8-102(A), or for "a person to drive a vehicle in this state if the person has an alcohol concentration of eight one hundredths or more in the person's blood or breath within three hours of driving the vehicle and the alcohol concentration results from alcohol consumed before or while driving the vehicle," N.M. STAT. § 66-8-102(B), fell under the residual clause in 18 U.S.C. § 924(e)(2)(B)(ii). *Begay*, 128 S. Ct. at 1584 (the crime became a felony after three convictions under this statute). The Court acknowledged that a DUI offense did, in accord with the express language of the residual

clause, "present[] a serious potential risk of physical injury to another," but stated that this was not the sole criterion for qualifying as a "violent felony" under that clause. Instead, the Court determined that "the provision's listed examples—burglary, arson, extortion, or crimes involving the use of explosives—illustrate the kinds of crimes that fall within the statute's scope." *Id.* at 1584-85. Thus, the residual clause in § 924(e)(2)(b)(ii) covers only "crimes that are roughly similar, in kind as well as in degree of risk posed, to the examples themselves." *Id.* at 1585.

The question for this Court, then, is whether fleeing an officer in a vehicle is sufficiently similar to burglary, arson, extortion, or the use of explosives, to constitute a "violent felony." The Court's reasoning in distinguishing DUI from the enumerated offenses in clause (ii) guides our inquiry in this case. In *Begay*, the Court noted that all the listed offenses "typically involve purposeful, 'violent,' and 'aggressive' conduct." *Id.* at 1586 (citing *United States v. Begay*, 470 F.3d 964, 980 (10th Cir. 2006) (McConnell, J., dissenting in part). More specifically, the Court observed that this type of conduct "makes [it] more likely that an offender, later possessing a gun, will use that gun deliberately to harm a victim," *id.*, which is " 'characteristic of the armed career criminal, the eponym of the statute.'" *Id.* (quoting *Begay*, 470 F.3d at 980 (McConnell, J., dissenting in part). The Court then noted that a DUI violation does not require purposeful, violent, and aggressive conduct. Rather drunk driving was akin to a strict liability offense, where the conduct "need not be purposeful or deliberate." *Id.* at 1586-87. The Court reasoned that while driving drunk "reveal[s] a degree of callousness toward risk," unlike burglary or arson, it did not

"show an increased likelihood that the offender is the kind of person who might deliberately point the gun and pull the trigger." *Id.* at 1587.

Based on the Court's reasoning, we find that fleeing an officer, in a vehicle, in violation of IND. CODE § 35-44-3-3(b)(1)(A), constitutes a "violent felony." That offense criminalizes using a vehicle to "knowingly or intentionally . . . flee[] from a law enforcement officer after the officer has, by visible or audible means, including operation of the law enforcement officer's siren or emergency lights, identified himself or herself and ordered the person to stop." IND. CODE § 35-44-3-3(b)(1)(A); § 35-44-3-3(a)(3). The primary distinction the Supreme Court relied upon to distinguish drunk driving from the enumerated crimes in § 924(e)(2)(B)(ii)—the strict liability nature of DUI—does not exist with respect to Indiana's fleeing statute. The Indiana law specifically provides that the flight must be done "knowingly or intentionally," thus ensuring that the law is only violated when an individual makes a "purposeful" decision to flee from an officer. Additionally, such conduct, when committed with a vehicle, is inherently "aggressive," despite Indiana law's absence of a requirement that the conduct endanger others. *Compare* IND. CODE § 35-44-3-3(b)(1)(A), *with* WIS. STAT. § 346.04(3) (requiring that the flight include "willful or wanton disregard of such signal so as to interfere with or endanger the operation of the police vehicle, or the traffic officer or other vehicles or pedestrians"). Taking flight calls the officer to give chase, and aside from any accompanying risk to pedestrians and other motorists, such flight dares the officer to needlessly endanger himself in pursuit. Moreover, the inquiry in *Begay* ultimately sought to determine whether the prior conviction made it more

likely that the "offender is the kind of person who might deliberately point the gun and pull the trigger." *Begay*, 128 S.Ct. at 1587. According to statistics published by the Department of Justice, one out of every four state and federal inmates convicted for brandishing or displaying a firearm, had used the gun in this manner in an effort to "get away."[3] BUREAU OF JUSTICE STATISTICS, U.S. DEPARTMENT OF JUSTICE, SURVEY OF INMATES IN STATE AND FEDERAL CORRECTIONAL FACILITIES: FIREARM USE BY OFFENDERS 11, Table 14 (Nov. 2001), http://www.ojp.usdoj.gov/bjs/pub/pdf/fuo.pdf. An individual's purposeful decision to flee an officer in a vehicle when told to stop, reflects that if that same individual were in possession of a firearm and asked to stop by police, they would have a greater propensity to use that firearm in an effort to evade

---

[3] The survey compiled a table regarding the "Extent of firearm use during current offense for State and Federal prison inmates possessing a firearm, 1997." BUREAU OF JUSTICE STATISTICS, U.S. DEPARTMENT OF JUSTICE, SURVEY OF INMATES IN STATE AND FEDERAL CORRECTIONAL FACILITIES: FIREARM USE BY OFFENDERS 11, Table 14 (Nov. 2001), http://www.ojp.usdoj.gov/bjs/pub/pdf/fuo.pdf. According to the survey, 73.2% of state inmates, and 46.2% of federal inmates had "brandished" or "displayed" their firearm. *Id.* Additionally, 18.9% of all state inmates convicted of possessing a firearm had brandished or displayed the weapon to "get away," compared with 11.6% of all federal inmates. *Id.* This means that of those state inmates who had brandished or displayed their firearm, 25.8% had done so to "get away," compared with 25.1% of federal inmates. Offenders characterized as brandishing or displaying a firearm also may have "discharged" the weapon to "get away," *see id.* ("Percents of subtotals do not add to totals because inmates may have used a firearm in more than one way."), but the data provided did not offer a way to compute that figure.

arrest. This link between using a vehicle to flee an officer, and that same individual's likelihood of using a gun when fleeing in the future, distinguishes this crime from those listed by the Court in *Begay* as being "dangerous," but not reflective of someone "whom one normally labels [an] 'armed career criminal[].'" *Begay*, 128 S.Ct. at 1587 ("*See, e.g.,* ARK. CODE ANN. § 8-4-103(a)(2)(A)(ii) (2007) (reckless polluters); 33 U.S.C. § 1319(c)(1) (individuals who negligently introduce pollutants into the sewer system); 18 U.S.C. § 1365(a) (individuals who recklessly tamper with consumer products); § 1115 (seamen whose inattention to duty causes serious accidents)."). For these reasons, we affirm the district court's judgment with respect to Spells's designation as an armed career criminal.[4]

---

[4] Because we have determined that IND. CODE § 35-44-3-3(b)(1)(A) is a "violent felony," and Spells does not contest that designation's applicability to § 35-44-3-3(b)(1)(B), it was unnecessary for the district court to examine which portion of Indiana's "divisible" statute for Class D felonies Spells was convicted under. Therefore, we need not determine whether the district court impermissibly consulted materials beyond those approved by the Supreme Court in *Shepard*.

Spells also contends that finding general flight statutes to fall under § 924(e)(2)(B)(ii)'s residual clause raises certain constitutional concerns. In his initial brief to this Court, Spells argued that issues regarding separation-of-powers and the void-for-vagueness doctrine arose from the lack of a requirement that crimes falling under the residual clause in § 924(e)(2)(B)(ii) bear a relationship to the enumerated offenses in that subsection. *Begay*, although not addressing these constitutional matters, held that a nexus needed to exist between the enumerated and residual crimes, thus providing the general analytic

(continued...)

### C. Career Offender Designation

Spells also argues that the district court improperly found him to be a "career offender" under the Guidelines. U.S.S.G. § 4B1.1. A defendant is designated a "career offender" if:

(1)  the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction;

(2)  the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and

(3)  the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a). Spells does not contest that his "instant offense of conviction" or his prior convictions for robbery

---

[4] (...continued)

framework Spells sought. Spells also raises an *Apprendi* challenge, arguing that the Sixth Amendment requires that a jury determine whether his prior conviction involved the requisite "serious potential risk of physical injury" to constitute a "violent felony." This Court, however, has repeatedly rejected such claims, in light of the Supreme Court's decision in *Almendarez-Torres v. United States*, 523 U.S. 224, 247 (1998). *See United States v. Thornton*, 463 F.3d 693, 699-700 (7th Cir. 2006) (rejecting the claim "that the jury was required to pass on the existence of all qualifying convictions" under the Armed Career Criminal Act); *see also United States v. Salahuddin*, 509 F.3d 858, 863 (7th Cir. 2007) ("A prior conviction need not be put to a jury before it may be used to enhance a defendant's sentence."). The Supreme Court has not overruled that decision, and therefore, we reject this claim.

under Indiana law constituted "crimes of violence." Instead, he argues that because his two robbery convictions were consolidated for sentencing, they were "related," and thus should only be counted as a single prior conviction. *See* U.S.S.G. § 4B1.2(c) (stating that the "two prior felony convictions" needed to be designated a "career offender," must be offenses counted separately under the terms of § 4A1.1(a), (b), or (c)).

The Government claims that Spells has waived this argument by failing to raise it before the district court. Even if we were to deem this claim only forfeited, however, and subject to review for plain error, *United States v. Harris*, 230 F.3d 1054, 1058-59 (7th Cir. 2000), our decision that using a vehicle to flee an officer is a "violent felony" forecloses any need for this Court to address this claim. Because a prior offense's characterization as a "violent felony" under the Armed Career Criminal Act is "interchangeable" with the "crime of violence" designation under the career offender guideline, *United States v. Rosas*, 401 F.3d 843, 845 (7th Cir. 2005), Spells's prior conviction for Resisting Law Enforcement under Indiana law is a "crime of violence." Therefore, even if Spells's two robbery convictions were "related," and thus counted as a single "crime of violence," Spells would still have the two prior felony convictions needed to be found a "career offender."

### D.  262 Month, Concurrent Sentence on Counts 1 and 3

Spells's final claim is that the district court erred in sentencing him to "262 months, concurrent" on Counts 1 and 3, since the statutory maximum sentence for Count 1, robbery in violation of 18 U.S.C. § 1951(a), was 240 months. 18 U.S.C. § 1951(a) (violators of this statute "shall be . . .

imprisoned not more than twenty years"). The Government, in response to Spells's Motion to Correct Sentence below, noted that Count 3 carried a statutory maximum sentence of life imprisonment, and then relied upon U.S.S.G. § 5G1.2(d) for the proposition that, in fact, "the [district] Court did not err in sentencing because the sentences were imposed consecutively." The district court then denied Spells's motion, stating that the Government's response brief "reflect[ed] the Court's reasoning in structuring the sentence as imposed." We review this application of the Guidelines *de novo*. *United States v. Samuels*, 521 F.3d 804, 815 (7th Cir. 2008).

Despite the fact that this sentencing error is little more than a minor technicality, a limited remand is required in this case. The Guidelines recommended a sentence of 262-327 months on Counts 1 and 3, plus an 84 month consecutive sentence for Count 2. The district court chose to impose a sentence at the low end of the Guidelines. The 262 month sentence on Count 3 is unproblematic, since as an armed career criminal, the statutory maximum sentence for Spells's violation of 18 U.S.C. § 922(g) was life imprisonment. 18 U.S.C. § 924(e)(1). On Count 1, however, 240 months imprisonment was the statutory maximum sentence that could be imposed, as Spells noted below.

In responding to Spells's Motion to Correct Sentence, the Government, and subsequently the district court, incorrectly relied upon U.S.S.G. § 5G1.2(d) to explain the sentence. That provision states:

> *If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment*, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the

extent necessary to produce a combined sentence equal to the total punishment. In all other respects, sentences on all counts shall run concurrently, except to the extent otherwise required by law.

U.S.S.G. § 5G1.2(d) (emphasis added). This first clause of this Guidelines provision reflects that it only applies when the recommended sentence under the Guidelines *exceeds* the highest statutory maximum. *See, e.g., United States v. Hernandez*, 330 F.3d 964, 982-83 (7th Cir. 2003) (applying § 5G1.2(d) when the Guidelines range was 30 years to life, and the statutory maximum penalty on each of the four counts of conviction was 20 years). That is not the case here, where the statutory maximum sentence on Count 3 was life imprisonment, and the Guidelines sentence was only 262 months.

Instead, U.S.S.G. § 5G1.2(c) explains that, "[i]f the sentence imposed on the count carrying the highest statutory maximum is adequate to achieve the total punishment, then the sentences on all counts shall run concurrently, except to the extent otherwise required by law." This is the provision applicable here, since the statutory maximum sentence of life imprisonment under Count 3 covers the Guidelines recommended sentence of 262 months on Counts 1 and 3.[5] On appeal, the Government

---

[5] The Comments to the Guidelines explain this in more detail:

Usually, at least one of the counts will have a statutory maximum adequate to permit imposition of the total punishment as the sentence on that count. The sentence on each of the other counts will then be set at the lesser of the total punishment and the applicable statutory maximum,

(continued...)

has apparently conceded that this is the proper approach, now arguing that "[t]he [district] court effectively sentenced Spells to 240 months on Count One and 262 months on Count Three to run concurrently." A limited remand is necessary to allow the district court to clarify for the record if this is, in fact, what it "effectively" sought to do at sentencing.

## III.  Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court in all respects, except for the district court's sentence of 262 months concurrent on Counts 1 and 3, and order a limited REMAND for the district court to clarify this sentence in accord with the statutory maximum of 240 months on Count 1.

---

[5]  (...continued)
and be made to run concurrently with all or part of the longest sentence. If no count carries an adequate statutory maximum, consecutive sentences are to be imposed to the extent necessary to achieve the total punishment.

U.S.S.G. § 5G1.2 cmt. 1.

---