NIEMEYER, Circuit Judge,
dissenting:
Following Roseboro’s conviction for the illegal possession of firearms and ammunition, in violation of 18 U.S.C. § 922(g)(1), the district court sentenced him as an “armed career criminal” to 262 months’ imprisonment. To satisfy the requirement of the Armed Career Criminal Act (“ACCA”), 18 U.S.C. § 924(e), that Rose-boro have three previous convictions for “violent felonies,” the district court relied on Roseboro’s three prior convictions — in 1996, 2001, and 2002 — for failing to stop for a blue light, in violation of South Carolina Code § 56-5-750. To conclude that Roseboro’s convictions were for “violent felonies,” the district court relied on United States v. James, 337 F.3d 387, 390-91 (4th Cir.2003) (hereinafter James (4th Cir.)), where we held that a violation of South Carolina Code § 56-5-750 is a violent felony for purposes of ACCA.
The majority agrees that if James (4th Cir.) has not been overruled, it controls and requires us to affirm the district court’s sentence. The majority, however, contends that the Supreme Court’s recent decision in Begay v. United States, -— U.S.-, 128 S.Ct. 1581, 170 L.Ed.2d 490 (2008), overruled James (4th Cir.) and that when the analysis undertaken in Begay is applied to South Carolina Code § 56-5-750, one must conclude that a violation of that law is not a violent felony.
Because I believe that Begay did not overrule our decision in James (4th Cir.), I respectfully dissent. Begay construed a New Mexico statute criminalizing driving while under the influence of alcohol, conduct materially distinguishable from that criminalized by South Carolina Code § 56-5-750. Moreover, when the analysis articulated in Begay is applied to the South Carolina statute, it becomes clear that a violation of the South Carolina statute is still a violent felony, as we held in James (4th Cir.).
I
At the outset, it is important to note that the analysis of whether a previous conviction qualifies as a violent felony for purposes of ACCA uses the categorical approach, an approach that we followed in James (4th Cir.) and that the Supreme Court followed in Begay. Under the categorical approach, we consider an offense “generically” — i.e. “in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion.” Begay, 128 S.Ct. at 1584; see also James v. United States, 550 U.S. 192, 127 S.Ct. 1586, 1596-97, 167 L.Ed.2d 532 (2007) (hereinafter James (S.Ct.)); Taylor v. United States, 495 U.S. 575, 602, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). Amplifying its depreciation, and indeed rejection of using an analysis of how a statute is violated “on a particular occasion” to define the offense, the Begay Court applied the holding in James (S.Ct.) that an offense can be a “violent felony even if, on some occasions, it can be committed in a way that poses no serious risk of physical harm.” Begay, 128 *244 S.Ct. at 1584 (citing James, 127 S.Ct. at 1597). The James (S.Ct.) Court, in holding that attempted burglary is categorically a violent felony and poses a serious risk of physical injury to others as required by ACCA, explained that although “[o]ne could, of course, imagine a situation in which attempted burglary might not pose a realistic risk of confrontation or injury to anyone[,] ... ACCA does not require metaphysical certainty.” James, 127 S.Ct. at 1597. The Court rejected the defendant’s assertion that in order to apply the categorical approach employed in Taylor, offense conduct in all cases had to present a risk of physical injury to others. The Court explained:
We do not view [the categorical] approach as requiring that every conceivable factual offense covered by a statute must necessarily present a serious potential risk of injury before the offense can be deemed a violent felony.... Rather, the proper inquiry is whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another. One can always hypothesize unusual cases in which even a prototypically violent crime might not present a genuine risk of injury....
James, 127 S.Ct. at 1597 (emphasis added and internal citation omitted).
The categorical approach thus considers a crime as defined by the language of the governing statute and projects it to the heartland of factual circumstances criminalized by the statute — the conduct that violates the elements of the statute in the ordinary case.
II
I now turn to the question of whether Begay overruled our decision in James (4th Cir.). The Supreme Court held in Begay that convictions under New Mexico’s driving under the influence of alcohol statute (DUI statute) are not violent felonies for purposes of ACCA. See 128 S.Ct. at 1588. The Begay Court reached this conclusion because violations of that statute typically do not involve “purposeful, violent, and aggressive conduct,” as is required by ACCA. Id. at 1586-87.
The relevant provision of the ACCA defines a violent felony as any crime punishable by imprisonment for a term exceeding one year that
is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another[.]
18 U.S.C. § 924(e)(2)(B)(ii). The Begay Court reasoned that because this definition of a violent felony includes illustrations of the kinds of crimes that fall within the definition, the general catchall provision “otherwise involves conduct that presents .a serious potential risk of physical injury to another” is limited by the nature of the crimes given as illustrations: “[T]he statute covers only similar crimes, rather than every crime that ‘presents a serious potential risk of physical injury to another.’” Begay, 128 S.Ct. at 1585 (quoting 18 U.S.C. § 924(e)(2)(B)(ii)). Summarizing the effect of this construction, the Court observed that the illustrative crimes in the statutory definition, which limit all predicate crimes falling within the definition, “typically involve purposeful, violent, and aggressive conduct.” Id. at 1586 (internal quotation marks and citations omitted).
When the Court considered the New Mexico statute in light of this interpretation of a “violent felony,” it concluded that “unlike the example crimes [in ACCA], the conduct for which the drunk driver is convicted (driving under the influence) need not be purposeful or deliberate.” Begay, 128 S.Ct. at 1587. Indeed, the Court ob *245 served that New Mexico’s statute was comparable to statutes imposing strict liability “in respect to which the offender need not have had any criminal intent at all.” Id. at 1586-87.
The South Carolina statute, which we considered in James (4th Cir.) and which criminalizes the failure to stop for a blue light, is materially different from New Mexico’s DUI statute. Moreover, under the Begay analysis, it is indeed a violent felony for purposes of ACCA, as we held in James (4th Cir.). South Carolina’s failure to stop for a blue light statute provides:
In the absence of mitigating circumstances, it is unlawful for a motor vehicle driver, while driving on a road, street, or highway of the State, to fail to stop when signaled by a law enforcement vehicle by means of a siren or flashing light.
S.C.Code Ann. § 56-5-750(A) (emphasis added). The operative clause, “to fail to stop when signaled,” requires a deliberate disobedience of the signal. “To signal” means “to notify by a signal” or “to communicate,” and “a signal” is the communication of a message — “something (as a sound, gesture, or object) that conveys notice or warning.” Merriam-Webster’s Collegiate Dictionary 1159 (11th ed.2007) (emphasis added). As elements of the offense, therefore, (1) a blue light signal must convey notice to a driver and (2) the driver must disobey the signal by failing to stop. See, e.g., State v. Hoffman, 257 S.C. 461, 186 S.E.2d 421, 425 (1972). Recognizing this plain meaning of the statutory language, we held in James (4th Cir.) that violation of this statute involves a deliberate choice to disobey:
Most cases of failing to stop for a blue light involve the deliberate choice by the driver to disobey the police officer’s signal. This disobedience poses the threat of a direct confrontation between the police officer and the occupants of the vehicle, which, in turn, creates a potential for serious physical injury to the officer, other occupants of the vehicle, and even bystanders.
James, 337 F.3d at 391 (emphasis added). Our holding in James (4th Cir.) was a rational interpretation of South Carolina’s statute, and we, as a panel of the court, are not now free to overrule it. See Scotts Co. v. United Indus. Corp., 315 F.3d 264, 272 n. 2 (4th Cir.2002). More importantly, this specific interpretation of the South Carolina statute was not overruled by Begay.
When we apply the Begay analysis to the South Carolina statute as construed in James (4th Cir.), we must conclude that a violation of the South Carolina statute is a violent felony, as defined by the ACCA.
Under Begay, a predicate crime must involve conduct presenting “a serious potential risk of physical injury to another” in a manner that is “roughly similar, in kind as well as in degree,” to the risks posed by the examples given. Begay, 128 S.Ct. at 1585. And the examples given typically involve purposeful, violent, and aggressive conduct. Id. at 1586. Thus, the Court in Begay held that a violation of New Mexico’s DUI statute is not a violent felony because it is not, in the ordinary case, violated with criminal intent. Id. at 1586-87. But the South Carolina statute is materially distinguishable because it is generally violated by the deliberate choice by the driver to disobey the police officer’s signal. Although circumstances such as those suggested by the majority can be conceived in which the statute is not violated deliberately, “in the ordinary case,” a driver is signaled to stop and fails to do so, revealing a deliberateness. South Carolina’s statute is unlike New Mexico’s DUI statute, which, the Supreme Court concluded, did not require criminal intent.
*246 Also important in Begay was the observation that when a defendant has prior convictions that are for violent felonies as defined in ACCA, there is an increased likelihood that the defendant will later pull the trigger of a gun involved in the violation of 18 U.S.C. § 922(g) (the statute for which the sentence is enhanced under ACCA). As the Begay Court noted:
Crimes committed in such a purposeful, violent, and aggressive manner are potentially more dangerous when firearms are involved. Aad such crimes are characteristic of the armed career criminal, the eponym of the statute.
Begay, 128 S.Ct. at 1586 (internal quotation marks and citation omitted). The Court thus concluded that a violation of the New Mexico DUI statute, which is, in the ordinary case, violated without criminal intent, is not indicative of whether the violator would be more likely to pull the trigger of a gun. Id. at 1587. But a violator of the South Carolina failure to stop for a blue light statute will be confronting police in virtually every instance, drastically increasing the risks associated with the crime. Surely, a driver who has three times disobeyed a police signal to stop, thereby flouting police authority, is more likely to pull the trigger of a gun when confronted by police. Cf. James, 127 S.Ct. at 1594-95 (concluding that a burglar, who might be confronted by police or a passerby, presents a “risk of violent confrontation” that satisfies the ACCA’s requirements and noting that “[t]he main risk of burglary [a listed crime under ACCA] arises not from the simple physical act of wrongfully entering onto another’s property, but rather from the possibility of a face-to-face confrontation between the burglar and a third party”); see also United States v. Spells, 537 F.3d 743 (7th Cir. 2008). In Spells, the Seventh Circuit advanced an analysis that is equally persuasive here:
Taking flight calls the officer to give chase, and aside from any accompanying risk to pedestrians and other motorists, such flight dares the officer to needlessly endanger himself in pursuit.... According to statistics published by the Department of Justice, one out of every four state and federal inmates convicted for brandishing or displaying a firearm, had used the gun in this manner in an effort to get away. An individual’s purposeful decision to flee an officer in a vehicle when told to stop, reflects that if that same individual were in possession of a firearm and asked to stop by police, they would have a greater propensity to use that firearm in an effort to evade arrest. This link between using a vehicle to flee an officer, and that same individual’s likelihood of using a gun when fleeing in the future, distinguishes this crime from those listed by the Court in Begay as being dangerous, but not reflective of someone whom one normally labels [an] armed career criminal.
Spells, 537 F.3d at 752-53 (internal quotation marks and citations omitted).
Ill
In short, the nature of the conduct criminalized by South Carolina’s failure to stop for a blue light statute and our holding in James (4th Cir.) that a violation of that statute involves “the deliberate choice by the driver to disobey the police officer’s signal” categorically present the profile of a violent felony, as demonstrated by the Begay analysis. The district court was undoubtedly correct in counting Rose-boro’s three previous convictions for violating the statute as predicate offenses for purposes of ACCA.
Accordingly, I would affirm.