In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-3624

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MARCUS SYKES,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:08-cr-00095-LJM-KPF-1—**Larry J. McKinney**, *Judge.*

ARGUED DECEMBER 11, 2009—DECIDED MARCH 12, 2010

Before BAUER, RIPPLE and KANNE, *Circuit Judges.*

BAUER, *Circuit Judge.* Defendant Marcus Sykes pleaded guilty to being a felon in possession of a firearm under 18 U.S.C. §§ 922(g)(1) and 924(e). The district court enhanced Sykes' sentence under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(2)(B)(ii), having determined that he had previously been found guilty of three violent felonies. We affirm.

## I. BACKGROUND

On July 22, 2008, Sykes pleaded guilty to being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1). He had been arrested for brandishing a gun while attempting to rob two people sitting in a parked car outside a liquor store in Indianapolis. Though Sykes aborted his robbery attempt, police saw him toss the gun aside and arrested him. Sykes pleaded guilty and the probation office issued a presentence report concluding that he was subject to a sentencing enhancement under the ACCA because he had three previous violent felony convictions—two convictions in 1996 for robbery and one in 2003 for resisting law enforcement, a Class D felony under Ind. Code § 35-44-3-3(b)(1)(A). Sykes objected to the enhancement. He argued that a conviction for resisting law enforcement in a vehicle under that provision of Indiana law is not a violent felony, despite our holding to the contrary in *United States v. Spells*, 537 F.3d 743, 753 (7th Cir. 2008).

The district court rejected that argument, applied the enhancement and sentenced Sykes to 188 months in prison. He timely appealed.

## II. DISCUSSION

Whether a prior conviction for resisting law enforcement is a violent felony under the ACCA is a legal conclusion we review de novo. *United States v. Samuels*, 521 F.3d 804, 815 (7th Cir. 2008). On appeal, Sykes acknowledges our holding in *Spells* that fleeing law enforcement

under Ind. Code § 35-44-3-3(b)(1)(A), counts as a violent felony under the ACCA's residual clause, 18 U.S.C. § 924(e)(2)(B)(ii). He contends, however, that we should abandon *Spells* and follow the Eleventh Circuit, which recently held that a nearly identical Florida statute that punishes "fleeing law enforcement" is not a violent felony under the ACCA. *United States v. Harrison*, 558 F.3d 1280, 1292 (11th Cir. 2009); *cf. United States v. Tyler*, 580 F.3d 722, 726 (8th Cir. 2009) (holding that Minnesota's resisting statute, which required increased speed or reckless driving, is not a violent felony under the ACCA's residual clause). For the reasons discussed below, we decline to do so.

The ACCA mandates a fifteen-year mandatory minimum prison sentence for anyone convicted under 18 U.S.C. § 922(g)(1), if that person has previously been convicted of two or more violent felonies. 18 U.S.C. § 924(e)(1). A violent felony is "any crime punishable by imprisonment for a term exceeding one year" that "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B).

Typically, our task would be to apply the categorical approach for determining whether a prior conviction is a violent felony, set out by the Supreme Court in *Begay v. United States*, 128 S.Ct. 1581 (2008). *Begay* requires us to first "categorize" the conduct proscribed by making a

determination based on the statutory elements of the crime, as to what type of conduct characterizes the typical commission of the crime. *Id*. at 1586-87; *United States v. Dismuke*, No. 08-1693, 2010 WL 292671, at *5 (7th Cir. Jan. 27, 2010). Once we have identified the conduct involved in a typical commission of the predicate crime, we then employ a two-step analysis to determine whether that typical violation is a violent felony under the ACCA. In the first step, we determine whether the conduct involves a similar degree of risk of serious bodily injury to others as the crimes listed in the ACCA—burglary, arson, extortion and the use of explosives. *Dismuke*, 2010 WL 292671, at *6. Second, the typical predicate crime must also be similar in kind to the ACCA's enumerated crimes, meaning it must involve the same kind of "purposeful, violent and aggressive" behavior that shows "an increased likelihood that the offender is the kind of person who might deliberately point the gun and pull the trigger." *Spells*, 537 F.3d at 751-52. When a predicate offense satisfies these requirements, it qualifies as a violent felony under the ACCA.

In "categorizing" Sykes' predicate crime we know, based on the presentence investigation report (PSR), and defense counsel's statements at sentencing and in the briefs, that he was convicted under Ind. Code § 35-44-3-3(b)(1)(A), a class D felony. Less than two years ago in *Spells*, we held that a conviction under this provision is a violent felony under the ACCA. 537 F.3d at 753. Decided after *Begay*, *Spells* followed the Supreme Court's categorical approach for ascertaining whether an offense is a violent felony under the ACCA. Applying this frame-

work to Indiana's statute, we held that "fleeing an officer, in a vehicle, in violation of Ind. Code § 35-44-3-3(b)(1)(A), constitutes a violent felony." *Id.* at 752. We first decided that the act of fleeing an officer in a vehicle involves a "serious potential risk of physical injury" to others, a decision we impliedly endorsed in *Dismuke*, 2010 WL 292671, at *10-11. We next held in *Spells* that resisting law enforcement in a vehicle under Indiana law typically involves conduct that is "purposeful, violent and aggressive" such that there is an increased likelihood that the "offender is the kind of person who would deliberately point [a] gun and pull the trigger." *Spells*, 537 F.3d at 752 (quoting *Begay*, 128 S.Ct. at 1587). Indiana's resisting statute criminalizes flight that is done "knowingly and intentionally," which satisfies the requirement that the conduct be purposeful, in contrast to DUI, which is more like a strict liability offense. *Id*. at 751. In addition, besides daring a cop to endanger himself by giving chase, the act of fleeing police in a vehicle typically creates a risk of harm to other drivers and pedestrians, reflecting a degree of callousness that might lead a person to later pull the trigger on a gun. *See id*. at 751-52. The offender's purposeful decision to do something that is inherently likely to lead to violent confrontation is an aggressive, violent act. *See id*. The court in *Begay* reasoned, as we did in *Spells*, that this combination of mental state and likelihood of confrontation with authorities is aggressive and violent because it is an invitation to, or acceptance of the potential violent outcome by the offender. *See Begay*, 128 S.Ct. at 1587-88; *Spells*, 537 F.3d at 752. This is true despite the fact that

a predicate offense may not *require* that an offender actually endanger others through his flight. The example crimes listed in § 924(e)(2)(B)(ii) also do not *require* that the offender put others in danger for conviction. *Begay*, 128 S.Ct. at 1586 (burglary only requires an unlawful entry into a building with the intent to commit a crime). However, resisting law enforcement and the enumerated crimes all create a likelihood of violent confrontation and are "purposeful, violent and aggressive."

While *Spells* did not explicitly address the "violent" part of *Begay*'s "purposeful, violent and aggressive" test, *see Dismuke*, 2010 WL 292671, at *9, its holding is good law and controls our case. In determining whether a felony violation of New Mexico's DUI statute was "violent and aggressive," the Supreme Court in *Begay* simply distinguished the conduct characterizing DUI with that characterizing the ACCA's enumerated offenses of burglary, arson, extortion and the use of explosives. *Begay*, 128 S.Ct. at 1586. While the enumerated offenses are characterized by purposeful, violent and aggressive conduct, and show an increased likelihood that an offender would later pull the trigger on a gun, the Court considered DUI more like a strict liability offense that does not present that increased likelihood. *Id*. at 1587. The Supreme Court elaborated no further on what constitutes the type of "violent" conduct required under the ACCA, other than providing examples of other strict liability offenses it thought were akin to DUI. *See id*. It is significant to note that none of the example crimes the Court listed required mental culpability above recklessness or negligence. *See id*. (reckless polluting, negligent

release of pollutants into sewer system, reckless tampering with consumer products and inattentive seamen who cause serious accidents). Similarly, we followed this framework in *Spells* when we distinguished Indiana's resisting law enforcement from DUI, and held that, unlike DUI, a person convicted of resisting law enforcement was much more likely to be someone labeled an "armed career criminal." *Spells*, 537 F.3d at 752-53. Furthermore, our holding in *Spells* is consistent with the Supreme Court's subsequent holding in *United States v. Chambers*, 129 S.Ct. 687, 691 (2009), that escape from custody is a violent felony under the ACCA, whereas a "crime of inaction," like failure to report to custody is not similarly purposeful, violent and aggressive. *Id.* at 692-93. A felony conviction for resisting law enforcement in Indiana is a crime of action more like escape than "failure to report," a crime of inaction. Its knowing and intentional requirement means that a typical offender does not simply fail to appear before authorities, but affirmatively eludes police custody by choosing to continue driving rather than pull over. *See Spells*, 537 F.3d at 752. Thus *Spells* is still good law because it correctly applied *Begay*'s "purposeful, violent and aggressive," requirement, and its reasoning has been implicitly affirmed in *Chambers*.

In the case at bar, Sykes urges us to overrule that holding and follow the Eleventh Circuit, which held that the offense of fleeing from police in a vehicle is not a violent felony under ACCA. *United States v. Harrison*, 558 F.3d 1280, 1295 (11th Cir. 2009). However, "[w]hile we carefully and respectfully consider the opinions of our

sister circuits, we certainly do not defer to them." *Atchison, Topeka & Santa Fe Ry. Co. v. Pena*, 43 F.3d 437, 443 (7th Cir. 1994) (quoting *Colby v. J.C. Penney Co., Inc.*, 811 F.2d 1119, 1123 (7th Cir. 1987)). Stare decisis requires that we adhere to our previous holdings unless we feel "obliged to bring [*Spells'*] opinion[ ] into line with experience and facts newly ascertained." *Vasquez v. Hillery*, 474 U.S. 254, 266 (1986) (quoting *Burnett v. Coronado Oil & Gas Co.*, 285 U.S. 393, 412 (1932) (Brandeis, J., dissenting)). The mere existence of *Spells* "becomes a reason for adhering to [its] holding[ ] in subsequent cases," *Midlock v. Apple Vacations W., Inc.*, 406 F.3d 453, 457 (7th Cir. 2005), especially when those cases are directly on point, as here. While the doctrine is not rigid, it is also "not a noodle." *Bethesda Home & Lutheran Serv's. v. Born*, 238 F.3d 853, 858 (7th Cir. 2001). We need articulable reasons for overruling precedent—e.g. it might be unsound in principle or unworkable in practice. *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 546 (1985). On the other hand, when parties and/or citizens widely rely on a particular decision, the interests of stability, predictability and respect for the courts may counsel against overruling a particular case. *Hilton v. S.C. Pub. Rys Comm'n*, 502 U.S. 197, 202 (1991).

We adhere today to our approach in *Spells* because it is neither unworkable nor unsound. First of all, this case is factually and legally indistinguishable from *Spells.* The categorical approach that guides this case prohibits us from considering anything other than the ACCA and the statutory language of the predicate offense. Our decision here rests upon the same underlying facts—a

prior conviction under Ind. Code § 35-44-3-3(b)(1)(A)—and the same legal question: whether that prior conviction is a violent felony under the ACCA's residual clause. Unfortunately for Sykes, his is not a case involving "facts newly ascertained" nor an unsound or unworkable precedent, and he offers no reason for us to depart from precedent, save the existence of a contrary holding in *Harrison*. In fact, although the Eleventh Circuit in *Harrison* reached a different conclusion about whether a prior conviction for resisting law enforcement is a violent felony, that court followed the same categorical approach outlined in *Begay* that we followed in *Spells*. *See Harrison*, 558 F.3d at 1295. We simply reached different conclusions. This does not make the approach or the result unworkable. Additionally, unlike the Eleventh Circuit, the Fifth, Sixth and Tenth Circuits have all agreed with our reasoning in *Spells*. *See United States v. Harrimon*, 568 F.3d 531, 536 (5th Cir. 2009); *United States v. Young*, 580 F.3d 373, 378 (6th Cir. 2009); *United States v. West*, 550 F.3d 952, 971 (10th Cir. 2008); *cf. United States v. Rivers*, No. 09-4336, 2010 WL 668928, at *5 (4th Cir. Feb. 25, 2010) (South Carolina's fleeing statute is not a violent felony because it criminalizes "a broad swath of unintentional conduct.").

We also note that our recent holding in *United States v. Woods*, 576 F.3d 400, 412-13 (7th Cir. 2009), does not change our analysis of this case. In *Woods*, we addressed whether a prior conviction under Illinois involuntary manslaughter law was a violent felony for purposes of the ACCA. But *Woods* does not control our decision here. Our holding in that case turned on the fact that

the mens rea required for a conviction of the predicate crime was recklessness, while the ACCA's residual clause only counts "purposeful" crimes as violent felonies. *Id.* at 412-13. In contrast, Ind. Code § 35-44-3-3(b)(1)(A) is a purposeful crime as we recognized in *Spells*, 537 F.3d at 752, and again in *Dismuke*, 2010 WL 292671, at *7-8.

Finally, we reject the idea, raised in passing in Sykes' brief, that the district court erred in failing to make a factual finding that his underlying conviction was of the felony variety under Ind. Code § 35-44-3-3(b)(1)(A), rather than a conviction for a lesser crime under some other part of the statute. In *Woods*, we addressed the question of how to apply the categorical approach in situations where the statute is divisible, in that it punishes conduct that is a violent felony, as well as conduct that is not. 576 F.3d at 403-07. In such cases, we follow a modified categorical approach that permits the court to look at a limited set of additional materials in order to determine under which portion of the statute the defendant was convicted. *Id.* at 404-05 (quoting *United States v. Smith*, 544 F.3d 781, 786-87 (7th Cir. 2009)). The court may look to a charging document, the terms of a plea agreement or transcript of a colloquy between the judge and defendant in which the factual basis for the plea was confirmed. Resort to these documents is only permitted for the limited purpose of properly categorizing the predicate offense by determining under which part of a divisible statute a defendant was convicted. The court may not consider the "particular facts underlying the defendant's conviction." *Id.* at 404. Even assuming Sykes properly pre-

served and raised this issue, (which he did not), *Woods* is not applicable because there is no doubt as to which portion of Indiana's statute that Sykes was convicted because it was separately numbered and was clearly identified in the PSR. The PSR stated that Sykes' conviction was for the Class D felony variety of resisting law enforcement under Ind. Code § 35-44-3-3(b)(1)(A), and provided the factual basis for the conviction. This particular portion of the statute is not divisible. It can only be violated when a person "knowingly or intentionally . . . flees from a law enforcement officer after the officer has . . . identified himself or herself and ordered the person to stop . . . and the person uses a vehicle to commit the offense . . . ." Ind. Code § 35-44-3-3(b)(1)(A). Sykes did not object to the PSR in the district court and therefore waived any such argument here unless he can show plain error. *United States v. Caban*, 962 F.2d 646, 650 (7th Cir. 1992). *See also* Fed. R. Crim. P. 32(i)(3)(A) (district court "may accept any undisputed portion of the presentence report as a finding of fact"). We find no error here plain or otherwise, not only because Sykes provides no reasons to support such a finding, but because he essentially admitted to the felony conviction at sentencing. *See* Tr. of Sentencing at 4, *United States v. Sykes*, 1:08-CR-95 (S.D. Ind. Oct. 8, 2008). When asked by the district court if he had any objections to the PSR, Sykes' attorney did not object to the characterization of the prior conviction as being under Ind. Code § 35-44-3-3(b)(1)(A). He only objected to characterization of Sykes' prior conviction as a violent felony under the ACCA, so that he could pursue that argument on appeal. The issue is waived.

### III. CONCLUSION

For the reasons set forth above, fleeing police in a vehicle in violation of Ind. Code § 35-44-3-3(b)(1)(A) is sufficiently similar to ACCA's enumerated crimes in kind, as well as the degree of risk posed, and counts as a violent felony under ACCA. We affirm.