# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 14, 2009

Charles R. Fulbruge III
Clerk

No. 08-10690

UNITED STATES OF AMERICA

Plaintiff-Appellant

v.

RICHARD RAY HARRIMON

Defendant-Appellee

Appeal from the United States District Court
for the Northern District of Texas

Before JONES, Chief Judge, and WIENER and BENAVIDES, Circuit Judges.

FORTUNATO P. BENAVIDES, Circuit Judge:

In this case we consider whether a violation of Texas Penal Code § 38.04(b)(1) (evading arrest or detention by use of a vehicle) is a "violent felony" for the purposes of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). We hold that it is.

**I**

On January 11, 2008, Defendant-Appellee Richard Ray Harrimon pleaded guilty to two counts of possession of a firearm by a convicted felon in violation

1

of 18 U.S.C. § 922(g)(1),[1] which is generally punishable by up to ten years in prison, *id*. § 924(a)(2). The ACCA, however, "imposes a more stringent 15-year mandatory minimum sentence on an offender who has three prior convictions 'for a violent felony or a serious drug offense.'" *Begay v. United States*, 128 S. Ct. 1581, 1583 (2008) (quoting 18 § U.S.C. 924(e)(1)). Harrimon had three prior felony convictions relevant to this appeal: a conviction for burglary of a building in 1986 and convictions for evading arrest or detention by use of a vehicle ("fleeing by vehicle") in violation of section 38.04(a) of the Texas Penal Code[2] in 2003 and 2004. The probation office concluded that the ACCA's fifteen-year mandatory minimum sentence did not apply because fleeing by vehicle is not a violent felony, and the government objected. At the sentencing hearing on June

---

[1]Under 18 U.S.C. § 922(g), it is:

unlawful for any person--

(1) who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year[]

. . . .

to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

[2]Section 38.04 of the Texas Penal Code provides that:

(a) A person commits an offense if he intentionally flees from a person he knows is a peace officer attempting lawfully to arrest or detain him.

(b) An offense under this section is a Class B misdemeanor, except that the offense is:

(1) a state jail felony if the actor uses a vehicle while the actor is in flight and the actor has not been previously convicted under this section[.]

13, 2008, the district court overruled the government's objection and imposed concurrent sentences of ninety-six months of imprisonment followed by three years of supervised release for each count. The government timely appealed.

## II

We review the district court's interpretation and application of the Armed Career Criminal Act *de novo*. *United States v. Helm*, 502 F.3d 366, 367 (5th Cir. 2007) (per curiam). For the purposes of the ACCA, a "violent felony" is "any crime punishable by imprisonment for a term exceeding one year" that:

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B).

"In determining whether [a] crime is a violent felony, we consider the offense generically, that is to say, we examine it in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." *Begay*, 128 S. Ct. at 1584; *see Chambers v. United States*, 129 S. Ct. 687, 690 (2009) ("The [ACCA's] defining language, read naturally, uses 'felony' to refer to a crime as generally committed."); *Taylor v. United States*, 495 U.S. 575, 602 (1990) (adopting this "categorical approach"); *see also James v. United States*, 550 U.S. 192, 203 (2007) ("[W]e consider whether the *elements of the offense* are of the type that would justify its inclusion within the residual provision, without inquiring into the specific conduct of this particular offender."). Here, the elements of fleeing by vehicle are clearly defined under Texas law: "(1) a person, (2) intentionally flees, (3) from a peace

officer, (4) with knowledge he or she is a peace officer, (5) the peace officer is attempting to arrest or detain the person, (6) the attempted arrest or detention is lawful, and (7) the person uses a vehicle while . . . in flight." *Powell v. State*, 206 S.W.3d 142, 143 (Tex. App.—Waco 2006, pet. ref'd). So defined, fleeing by vehicle is punishable by more than one year of imprisonment.[3] Tex. Penal Code 38.04(a). Turning to the other elements of § 924(e)(2)(B), the government does not contend either that fleeing by vehicle has as an element the use, attempted use, or threatened use of physical force against the person of another; that it is burglary, arson, or extortion; or that it involves the use of explosives. 18 U.S.C. § 924(e)(2)(B). Therefore, we must consider whether it "otherwise involves conduct that presents a serious potential risk of physical injury to another" under the "residual" provision of clause (ii) of § 924(e)(2)(B).

As the Supreme Court explained in *Begay v. United States*, the examples

---

[3]Harrimon argues that his 2003 conviction for evading arrest or detention by use of a vehicle was not "punishable by a term of imprisonment exceeding one year" under 18 U.S.C. § 924(e)(2)(B) because it was punished as a Class A misdemeanor under section 12.44 of the Texas Penal Code. Section 12.44 (1) allows judges to punish defendants convicted of state jail felonies such as the crime at issue here, which are generally punishable by imprisonment of up to two years, *see* Tex. Penal Code § 12.35(a), as Class A misdemeanors, for which one year is the maximum term of imprisonment, *see id.* § 12.21; and (2) allows the court to authorize prosecutors to prosecute state jail felonies as Class A misdemeanors. Tex. Penal Code § 12.44. In arguing that his 2003 conviction was not "punishable" by more than one year's imprisonment, Harrimon relies on *United States v. Rodriquez*, 128 S. Ct. 1783 (2008). *Rodriquez*, however, provides no support. In that case, the Supreme Court held that the lower courts erred in failing to include a statutory recidivism enhancement when determining the "maximum term of imprisonment" under another ACCA provision, concluding that "the concept necessarily referred to the maximum term prescribed by the relevant criminal statute." *Rodriquez*, 128 S. Ct. at 1792. Here, the relevant statute plainly authorizes up to two years of imprisonment for evading arrest or detention by use of a vehicle, Tex. Penal Code § 38.04(a), a fact which is unaltered by the sentencing judge's discretionary decision either to impose a lesser sentence or to allow the prosecutor to prosecute the offense as a misdemeanor (it is not clear from the record which of these possibilities occurred).

in clause (ii)—burglary, arson, extortion, and crimes involving the use of explosives—limit "the crimes that clause (ii) covers to crimes that are roughly similar, in kind as well as in degree of risk posed, to the examples themselves." 128 S. Ct. at 1585. The "presence [of the examples] indicates that the statute covers only *similar* crimes . . . ." *Id.* Thus, in determining whether fleeing by vehicle as defined in Texas Penal Code § 38.04 is a violent felony for the purposes of the ACCA, we must decide whether it is roughly similar to the examples in clause (ii) both (1) in kind and (2) in degree of risk posed (which must be at least a serious potential risk of physical injury to another). *See Chambers v. United States*, 129 S. Ct. 687, 691–93 (2009) (holding that failure to report to a penal institution, which is conceptually different from the crimes listed in clause (ii) and does not pose a serious potential risk of physical injury to another, is not a violent felony under the ACCA).

## III

### A

We first consider whether the crime at issue is similar in kind to burglary, arson, extortion, or crimes involving the use of explosives. As the Supreme Court stated in *Begay,* these crimes "all typically involve purposeful, violent, and aggressive conduct." 128 S. Ct. at 1586 (quotation omitted). "That conduct is such that it makes more likely that an offender, later possessing a gun, will use that gun deliberately to harm a victim." *Id.* Thus, in *Begay*, the Court held that the violation of a New Mexico DUI statute, which did not demand purposeful conduct and thus did not "show an increased likelihood that the offender is the kind of person who might deliberately point the gun and pull the trigger," was not a violent felony under the ACCA. *Id.* at 1587.

We conclude that fleeing by vehicle is purposeful, violent, and aggressive. First, it is purposeful: unlike the DUI statute at issue in *Begay*, fleeing by vehicle requires intentional conduct. Further, it is aggressive. "As commonly understood, aggressive behavior is offensive and forceful and characterized by initiating hostilities or attacks." *United States v. West*, 550 F.3d 952, 969 (10th Cir. 2008) (quotation omitted). Fleeing by vehicle requires disregarding an officer's lawful order, which is a clear challenge to the officer's authority and typically initiates pursuit. *See United States v. Spells*, 537 F.3d 743, 752 (7th Cir. 2008) ("Taking flight calls the officer to give chase, and aside from any accompanying risk to pedestrians and other motorists, such flight dares the officer to needlessly endanger himself in pursuit."). This active defiance of an attempted stop or arrest is similar to the behavior underlying an escape from custody, which, as the Supreme Court noted in *Chambers*, is "less passive" and "more aggressive" than that likely underlying failure to report. 128 S. Ct. at 691. Fleeing by vehicle is also violent: the use of a vehicle, usually a car, to evade arrest or detention typically involves violent force which the arresting officer must in some way overcome. As the Seventh Circuit observed in *Spells*, not only the arresting officer or officers, but also pedestrians and other motorists are subject to this force. *Spells*, 537 F.3d at 752. Further, fleeing by vehicle "will typically lead to a confrontation with the officer being disobeyed," a confrontation fraught with risk of violence. *West*, 550 F.3d at 970; *see James v. United States*, 550 U.S. 192, 203 (2007) ("The main risk of burglary arises not from the simple physical act of wrongfully entering onto another's property, but rather from the possibility of a face-to-face confrontation between the burglar and a third party . . . .").

6

Although the Seventh and Tenth Circuits have reached similar conclusions post-*Begay* while analyzing similar statutes in *Spells* and *West*,[4] we note that the Eleventh Circuit has not. In *United States v. Harrison*, the court, analyzing a Florida statute similar to the Texas statute at issue here, held that "disobeying a police officer's signal and continuing to drive on, without high speed or reckless conduct, is not sufficiently aggressive and violent enough to be like the enumerated ACCA crimes," and that "[i]t is not the deliberate kind of behavior associated with violent criminal use of firearms." 558 F.3d 1280, 1295 (11th Cir. 2009) (quotation omitted). While Harrimon urges that we follow *Harrison*, for the reasons explained above, we respectfully disagree with the Eleventh Circuit's analysis. *Cf. Chambers*, 129 S. Ct. at 694–95 & n.2 (Alito, J., concurring) (noting that the "'categorical approach' to predicate offenses has created numerous splits among the lower federal courts" and listing cases). To our minds, an offender's willingness to use a vehicle to flout an officer's lawful order to stop shows "an increased likelihood" that the offender would, if armed and faced with capture, "deliberately point the gun and pull the trigger."[5] *Begay*, 128 S. Ct. at 1587.

---

[4]Our conclusion is also consistent with *United States v. Roseboro*, in which the Fourth Circuit stated that "[t]he intentional act of disobeying a law enforcement officer by refusing to stop for his blue light signal, without justification, is inherently an aggressive and violent act, and, therefore, a violent felony under the ACCA" and remanded for a determination of whether the defendant's conviction for a violation of South Carolina's failure to stop for a blue light statute was intentional. 551 F.3d 226, 240 (4th Cir. 2009) (citation and footnote omitted).

[5]Harrimon also argues that under *United States v. Johnson*, the residual provision of clause (ii) covers only conduct that poses a risk to property. 286 F. App'x 155, 157–58 (5th Cir. 2008) (per curiam) (citing *Begay*, 128 S. Ct. at 1586 ("Congress sought to expand th[e] definition [of violent felony] to include both crimes against the person (clause (i)) and certain physically risky crimes against property (clause (ii))")). This is a correct reading of *Johnson*, *see id.* at 158; however, while unpublished opinions are persuasive authority, *see* 5th Cir. R. 47.5.4, we decline to follow *Johnson*. As the Tenth Circuit has cogently explained, while *Begay* discusses Congress's intent to include physically risky property crimes in the ACCA, "the

**B**

We next consider whether fleeing by vehicle is similar to the example crimes in degree of risk, *Begay*, 128 S. Ct. at 1585, and thus "involve[s] conduct that presents a serious potential risk of physical injury to another," *Chambers*, 129 S. Ct. at 691 (quotation omitted). As the Supreme Court explained in *James*, the categorical approach does not require "that every conceivable factual offense covered by a statute must necessarily present a serious potential risk of injury before the offense can be deemed a violent felony." 550 U.S. at 208. "Rather, the proper inquiry is whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another." *Id.* Here, we have no difficulty concluding that, in the ordinary case, fleeing by vehicle poses a serious risk of injury to others. While Harrimon argues that fleeing by vehicle does not become dangerous until law enforcement interrupts the perpetrator, fleeing by vehicle, by definition, can only occur after an initial attempt by an officer to arrest or detain the perpetrator. "This disobedience poses the threat of a direct confrontation between the police officer and the occupants of the vehicle, which, in turn, creates a potential for serious physical injury to the officer, other occupants of the vehicle, and even bystanders." *West*, 550 F.3d at 964–65 (quotation omitted).

Moreover, while it is possible, as Harrimon argues, to be guilty of fleeing by vehicle despite obeying all traffic laws and later surrendering quietly, *see*

---

dispositive section of the *Begay* opinion specifically holds . . . that the ACCA's residual language includes prior convictions for offenses that, like burglary, arson, extortion or crimes involving explosives, concern conduct that is purposeful, violent, and aggressive." *West*, 550 F.3d at 967 (quotation omitted); *see id.* at 967–68 (noting, in addition, that extortion—an example crime—is not a property crime and that *Begay* was not decided on the grounds that DUI is not a property crime, and collecting cases).

*Harrison*, 558 F.3d at 1295, we think that, in the typical case, an offender fleeing from an attempted stop or arrest will not hesitate to endanger others to make good his or her escape. *See West*, 550 F.3d at 964 ("[U]nder the stress and urgency which will naturally attend his situation, a person fleeing from law enforcement will likely drive recklessly and turn any pursuit into a high-speed chase with the potential for serious harm to police or innocent bystanders." (quoting *United States v. Kendrick*, 423 F.3d 803, 809 (8th Cir. 2005)); *see also James*, 550 U.S. at 208 ("One can always hypothesize unusual cases in which even a prototypically violent crime might not present a genuine risk of injury—for example, an attempted murder where the gun, unbeknownst to the shooter, had no bullets[.]").

It is this marked likelihood of pursuit and confrontation that separates fleeing by vehicle from failure to report to a penal institution, which the Supreme Court has said does not pose such a risk. *See Chambers*, 129 S. Ct. at 691–93. In the case of failure to report, "[t]here is no reason to believe" that whatever the offender is doing instead poses a serious potential risk of physical injury, and indeed, "an individual who fails to report would seem unlikely, not likely, to call attention to his whereabouts by simultaneously engaging in additional violent and unlawful conduct." *Id*. at 692. In the case of fleeing by vehicle, however, we know from the nature of the offense what the offender is doing: using a vehicle to evade an officer's attempt to lawfully arrest or detain the offender, with the risks discussed above.[6]

---

[6]Fleeing by vehicle may be similarly distinguished from simple motor vehicle theft, which we have held does not present a serious potential risk of physical injury to another, *United States v. Charles*, 301 F.3d 309, 313–15 (5th Cir. 2002) (en banc). Whereas simple motor theft frequently occurs without being observed or interrupted, fleeing by vehicle cannot.

9

Finally, while, unlike the Supreme Court in *Chambers*, we do not have the benefit of a report from the United States Sentencing Commission, the empirical evidence appears to support the "intuitive belief" that fleeing by vehicle involves a serious potential risk of physical injury to others. *Id.* We note that according to a study funded by the Justice Department and collecting police pursuit data from fifty-six law enforcement agencies in thirty states, 314 injuries (including fatal injuries) to police and bystanders resulted from 7,737 reported pursuits. Cynthia Lum & George Fachner, Int'l Assoc. of Chiefs of Police, *Police Pursuits in an Age of Innovation and Reform* 57 (2008), http://www.theiacp.org/LinkClick.aspx?fileticket=IlJDjYrusBc%3d&tabid=392. This amounts to roughly .04 injuries to others per pursuit. Of course, these numbers do not tell us how often the conduct underlying fleeing by vehicle leads to police pursuits, but if, as we strongly suspect, pursuits occur a reasonable percentage of the time, then the risk of injury to others would appear to be at least "roughly similar" to that associated with arson. *Begay*, 128 S. Ct. at 1585. According to the United States Fire Administration, there are roughly 267,000 fires attributed to arson per year, resulting in over 2,475 injuries, including fatal injuries—and, apparently, injuries to perpetrators—or roughly .009 injuries per arson. U.S. Fire Admin., *Arson in the United States*, 1 Topical Fire Research Series (Issue 8) (2001), http://www.usfa.dhs.gov/downloads/pdf/tfrs/v1i8-508.pdf; *see also* U.S. Fire Admin., *Arson for Profit: National Arson Awareness Week Media Kit* 2 (2009), http://www.usfa.dhs.gov/downloads/pdf/arson/aaw09_media_kit.pdf (reporting a National Fire Protection Association estimate of 323,900 "intentional fires" reported to United States fire departments in 2005, resulting in 9,593 civilian

and on-duty firefighter injuries, including fatal injuries, or approximately .03 injuries per intentional fire, apparently including injuries to perpetrators).

**IV**

For the foregoing reasons, the district court erred as a matter of law in concluding that a violation of Texas Penal Code § 38.04(b)(1) (evading arrest or detention by use of a vehicle) is not a "violent felony" for the purposes of the ACCA. We therefore VACATE Harrimon's sentence and REMAND for re-sentencing consistent with this opinion.