# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3574

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Gregory Scott Tyler, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: June 10, 2009
Filed: September 4, 2009

_____

Before SMITH and SHEPHERD, Circuit Judges, and LIMBAUGH,[1] District Judge.

_____

SHEPHERD, Circuit Judge.

Gregory Scott Tyler appeals his sentence of 120 months imprisonment. Tyler contends that his prior Minnesota conviction for fleeing a peace officer in a motor vehicle is not a "crime of violence" and, therefore, the district court erred when it sentenced him as a career offender. We vacate Tyler's sentence and remand for resentencing.

_____

[1]The Honorable Stephen N. Limbaugh, Jr., United States District Judge for the Eastern District of Missouri, sitting by designation.

In February 2008, Tyler pled guilty to one count of bank robbery in violation of 18 U.S.C. § 2113(a). Prior to his sentencing hearing, Tyler objected to the Presentence Investigation Report, which concluded that Tyler's prior conviction under Minnesota Statutes § 609.487 subdivision 3 for fleeing a peace officer in a motor vehicle was a "crime of violence" and recommended that Tyler be sentenced as a career offender. See United States Sentencing Commission, Guidelines Manual, §4B1.2(a) (Nov. 2008). At sentencing, the district court overruled Tyler's objection, determining that his prior Minnesota conviction constituted a "crime of violence."

> I think this involves [] purposeful[,] violent[,] and aggressive conduct. And here you have somebody who at least [] attempts to flee, and flee meaning with the intent to elude a peace officer following the signal given by any peace officer to the driver of a motor vehicle, it seems to me there is somebody who—if you're willing to disregard or elude a peace officer who has told you to stop, I think you are putting yourself and anybody in close proximity in danger and it's an intentional, purposeful act. . . . Here[,] the whole purpose of driving that car is to elude somebody who has the lawful authority to stop you. And it seems to me that evidence is an intent to do something that's necessary to get away and whether that's run into somebody, high speeds, whatever it is. So at least in my mind looking at the Begay[2] case, I think this clearly fits what the majority in that opinion is describing as a crime of violence or violent felony.

(Sentencing Tr. 9-10.)

After classifying Tyler as a career offender under USSG §4B1.1, the district court calculated an advisory Guidelines range of 151 to 188 months, resulting from a total offense level of 29 and a criminal history category of VI. Because the government moved for a downward departure based on substantial assistance, the district court ultimately sentenced Tyler to 120 months imprisonment. However, the

---

[2]See Begay v. United States, 128 S. Ct. 1581 (2008).

court made clear that, absent the substantial assistance departure, it would have imposed a 170-month sentence, which was within the Guidelines range based on Tyler's career offender status.

The sole issue on appeal is whether Tyler's prior Minnesota conviction for fleeing a peace officer in a motor vehicle constitutes a "crime of violence." "We review de novo the district court's conclusion [that] a particular offense constitutes a 'crime of violence' under the 'career offender' provision of §4B1.1." United States v. Cantrell, 530 F.3d 684, 694 (8th Cir. 2008). The Sentencing Guidelines define "crime of violence" as:

> [A]ny offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

USSG §4B1.2(a).

The Minnesota Statutes characterize the offense of fleeing a peace officer in a motor vehicle as follows:

> **Subd. 3. Fleeing officer; motor vehicle.** Whoever by means of a motor vehicle flees or attempts to flee a peace officer who is acting in the lawful discharge of an official duty, and the perpetrator knows or should reasonably know the same to be a peace officer, is guilty of a felony and may be sentenced to imprisonment for not more than three years and one day or to payment of a fine of not more than $5,000, or both.

Minn. Stat. § 609.487 subd. 3. That same statutory section also defines what types of conduct constitute fleeing:

> **Subdivision 1. Flee; definition.** For purposes of this section, the term "flee" means to increase speed, extinguish motor vehicle headlights or taillights, refuse to stop the vehicle, or use other means with intent to attempt to elude a peace officer following a signal given by any peace officer to the driver of a motor vehicle.

Id. § 609.487 subd. 1. This offense does not require "the use, attempted use, or threatened use of physical force," nor does it constitute "burglary of a dwelling, arson, [] extortion, [or the] use of explosives." USSG §4B1.2(a). Thus, we must decide whether the offense "(1) involves conduct that presents a serious potential risk of physical injury to another and (2) typically involves purposeful, violent, and aggressive conduct." United States v. Gordon, 557 F.3d 623, 626 (8th Cir. 2009) (quotations and citation omitted).[3] In performing this analysis, we resist the dissent's invitation to review the underlying facts of Tyler's conviction for fleeing a peace officer as "we focus on the generic elements of the offense and not on the specific facts underlying [the] conviction." Id. at 625 (citing Begay, 128 S. Ct. at 1584 (applying the "categorical approach" adopted by the Supreme Court in Taylor v. United States, 495 U.S. 575, 602 (1990))).

We cannot say that Minnesota's crime of fleeing a peace officer in a motor vehicle typically "involves conduct that presents a serious potential risk of physical injury to another." Gordon, 557 F.3d at 626. In fact, section 609.487 contains a separate subdivision that criminalizes the act of fleeing a peace officer in a motor vehicle when it causes "death . . . or any bodily injury to any person other than the perpetrator" and provides enhanced criminal penalties. Minn. Stat. § 609.487 subd.

---

[3]Although the Gordon court was analyzing whether an offense constituted a "violent felony" under the Armed Career Criminal Act, we employ the same test to decide whether an offense constitutes a "crime of violence" under the Sentencing Guidelines because the definitions of "violent felony" and "crime of violence" are virtually identical. See, e.g., United States v. Wilson, 562 F.3d 965, 967-68 (8th Cir. 2009).

4. Neither high speed nor reckless driving is a statutory element of Minnesota Statutes § 609.487 subd. 3. The statute requires only that a perpetrator "increase speed, extinguish motor vehicle headlights or taillights, [or] refuse to stop . . . with intent to attempt to elude a peace officer . . . ." Minn. Stat. § 609.487 subd. 1. While such actions are admittedly disobedient, they do not necessarily translate into a serious potential risk of physical injury. See United States v. Harrison, 558 F.3d 1280, 1294 (11th Cir. 2009) (finding that Florida's fleeing crime is not a violent felony).

> Indeed, the fact that the behavior underlying [the] willful-fleeing crime, in the ordinary case, involves only a driver who willfully refuses to stop and continues driving on [or who extinguishes headlights or taillights]—but without high speed or recklessness—makes it unlikely that [any] confrontation [with police] will escalate into a high-speed chase that threatens pedestrians, other drivers, or the officer.

Id.

Even assuming a serious risk of physical injury exists in a routine violation of Minnesota Statutes § 609.487 subdivision 3, we cannot say that the offense "typically involve[s] . . . violent[] and aggressive conduct." Gordon, 557 F.3d at 626. To be convicted of the Minnesota crime in question, the perpetrator must act "with *intent* to attempt to elude a peace officer . . . ." Minn. Stat. § 609.487 subd. 1 (emphasis added). Thus, the offense typically involves purposeful conduct. However, the statute's definition of "fleeing" criminalizes conduct that is neither violent nor aggressive, such as merely "extinguish[ing] motor vehicle headlights or taillights." Id. The common thread running through offenses found to be "crimes of violence" is that those crimes implicate a propensity in the perpetrator to commit violent acts against others. Cf. Begay, 128 S. Ct. at 1587 (noting the importance of the "likelihood that the offender is the kind of person who might deliberately point the gun and pull the trigger" in determining whether a prior offense constitutes a "violent felony" under the Armed Career Criminal Act). We do not believe extinguishing one's headlights

-5-

or taillights to avoid being pulled over by a police officer implies a propensity to act violently toward others. The government contends that fleeing a peace officer in a motor vehicle typically leads to a chase and a confrontational encounter with the officer being disobeyed. However, the elements of the statute do not require a confrontation, chase, or any other conduct indicating that the crime in question necessarily involves conduct presenting a serious risk of physical injury to another or conduct that is violent and aggressive.

We note that there is disagreement among the circuits concerning whether fleeing a peace officer in a motor vehicle constitutes a "violent felony" or "crime of violence." Compare Harrison, 558 F.3d at 1294-96 (Florida's fleeing offense is not a violent felony), with United States v. LaCasse, 567 F.3d 763, 765-67 (6th Cir. 2009) (Michigan's fleeing offense is a violent felony), United States v. Harrimon, 568 F.3d 531, 534-37 (5th Cir. 2009) (Texas's fleeing offense is a violent felony), and United States v. West, 550 F.3d 952, 960-71 (10th Cir. 2008) (Utah's fleeing offense is a violent felony). We believe the Texas and Utah statutes are distinguishable from the Minnesota statute at issue in this case because they do not define fleeing so broadly as to encompass nonviolent conduct. See Tex. Penal Code Ann. § 38.04 (using the term "flees" without defining it); Utah Code Ann. § 41-6a-210 (requiring that the perpetrator "operate the vehicle in willful or wanton disregard of the signal so as to interfere with or endanger the operation of any vehicle or person" or "attempt to flee or elude a peace officer by vehicle or other means" without defining the terms "flee" or "elude"). However, we note that Michigan's fleeing offense is defined similarly to Minnesota's offense and, therefore, disagree with the Sixth Circuit's analysis in LaCasse. See Mich. Comp. Laws § 750.479a (prohibiting "increasing the speed of the vehicle, extinguishing the lights of the vehicle, or otherwise attempting to flee or elude").

Focusing on the generic elements of the offense, as we must do under the categorical approach, see Gordon, 557 F.3d at 625, we conclude that Minnesota's crime of fleeing a peace officer in a motor vehicle does not constitute a "crime of

violence" under the Sentencing Guidelines because we cannot say that the offense typically involves (1) conduct presenting a serious risk of physical injury to another or (2) conduct that is violent and aggressive.[4] The district court erred in sentencing Tyler as a career offender and, thus, improperly calculated Tyler's offense level and Guidelines range, which constitutes significant procedural error. See e.g., United States v. Wilson, 562 F.3d 965, 968 (8th Cir. 2009). Although the court ultimately sentenced Tyler below the improperly calculated Guidelines range after it departed downward for substantial assistance, we cannot discern what sentence the court would have imposed if it had departed downward from a properly calculated Guidelines range. Therefore, we cannot say that the court's procedural error was harmless. See id. Accordingly, we must vacate Tyler's sentence and remand for resentencing.

---

[4]As both parties note, we previously found that the Oregon offense of fleeing or attempting to elude police officers while operating a motor vehicle was a "crime of violence" under the Guidelines. See United States v. Kendrick, 423 F.3d 803, 808-09 (8th Cir. 2005). Kendrick does not bind on our decision for multiple reasons. First, the decision predated Begay v. United States, 128 S. Ct. 1581 (2008). As we recognized in United States v. Williams, 537 F.3d 969 (8th Cir. 2008), our analysis prior to Begay focused solely on whether the offense involves conduct presenting a serious risk of physical injury to another. Id. at 972. While Begay did not disturb such findings in our prior cases, it added a second inquiry to our analysis—whether the offense typically involves "purposeful, violent, and aggressive" conduct. Id. Though Kendrick still stands for the proposition that Oregon's fleeing offense involves conduct that presents a serious risk of physical injury to another, it says nothing about whether the offense typically involves purposeful, violent, and aggressive conduct. Further, Kendrick says nothing about Minnesota's fleeing statute, which differs from Oregon's. Compare Minn. Stat. § 609.487 (defining "fleeing" broadly to include nonviolent conduct), with Or. Rev. Stat. § 811.540 (using terms "fleeing" and "elude" without defining them to include nonviolent conduct).

LIMBAUGH, District Judge, dissenting.

I respectfully dissent.

Under the Sentencing Guidelines, the term "crime of violence" is defined as:

[A]ny offense under federal or state law, punishable by imprisonment for a term exceeding one year, that --

(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2) is burglary of a dwelling, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U. S. Sentencing Guidelines Manual § 4B1.2(a)(2) (2008).

The question to be answered in applying this definition relates to the "otherwise" clause, that is, whether the Minnesota offense of fleeing a peace officer by means of a motor vehicle, Minn. Stat. § 609.487 subdv. 3, typically and categorically "involves conduct that presents a serious potential risk of physical injury to another." I submit that it does.

My initial concern is that although the principal opinion correctly identifies the question presented, its holding gives no heed to the term "potential risk" (as opposed to an actual risk), and in fact, the opinion omits the word "potential" in concluding that "we cannot say that the offense typically involves (1) conduct presenting a serious risk of physical injury to another, or (2) conduct that is violent and aggressive."

Turning to the Minnesota statute, the term, "to flee," by use of a motor vehicle "means to increase speed, extinguish motor vehicle headlights or taillights, refuse to stop the vehicle, or use other means with intent to attempt to elude a peace officer

following a signal given by any peace officer to the driver of a motor vehicle." Minn. Stat. § 609.487 subdv. 1. This is conduct that typically and categorically involves a serious POTENTIAL risk of physical injury to another. Indeed, in many instances, increasing speed, extinguishing headlights or taillights, or refusing to stop, is misconduct that, in and of itself, would give rise to a serious potential risk of physical injury to others, but that misconduct, when combined with the "intent to elude a peace officer" who has signaled the driver to stop, will invariably do so. The intent to elude, in other words, compounds the danger that already accompanies the misconduct. This is not mere "disobedience," as the principal opinion puts it, but instead is a recipe for disaster. A chase ensues, of course, usually followed by a confrontation, and though the peace officer will typically follow safety protocols to avoid injury to others, that concern will typically be of little interest to the fleeing offender. By his actions, the fleeing offender has converted his vehicle to a dangerous instrumentality, and the pedestrians, bystanders, and other drivers who happen on the scene, not to mention the police themselves, are faced with a serious risk of physical injury. And indeed, at that point, the risk is no longer potential, but real and immediate.

The principal opinion correctly notes that the focus of our inquiry under the "categorical" approach is "on the generic elements of the offense and not on the specific facts underlying [the defendant's] conviction," but that focus does not preclude us from eliciting the specific facts in cases where those facts are representative and typical of the ways that the offense occurs. And that is the case here. Although the only injury was to property, rather than persons, the undisputed facts illustrate the risk to both:

> [O]fficers observed the defendant driving a vehicle owned by an individual with an outstanding gross misdemeanor warrant and revoked driving status. A routine traffic stop was conducted. The defendant drove off when the officers approached the vehicle. Officers pursued the defendant while he was driving at excessive speeds. The defendant failed to adhere to traffic signs and lights. He lost control of his vehicle,

-9-

skidded into a steel cemetery gate, and fled by foot. He was apprehended shortly after.

I also disagree with the principal opinion's reliance on subdivision 4 of section 609.487 "that criminalizes the act of fleeing a peace officer in a motor vehicle when it causes 'death . . . or any bodily injury to any person other than the perpetrator' and provides enhanced criminal penalties," as if that subdivision's express reference to death or bodily injury preempts or precludes subdivision 3 from the Guidelines definition of a crime of violence. To the contrary, the fact that subdivision 4 enhances the penalty for the same misconduct specified in subdivision 3 when death or bodily injury actually occurs reinforces the notion that the misconduct under subdivision 3 constitutes a serious potential risk that such physical injury will occur. To be sure, the fact that Minnesota has put in place the enhanced penalty in subdivision 4 where death or bodily injury occurs as a result of increasing speed, extinguishing headlights or taillights, or refusing to stop with the intent to elude a peace officer, is a tacit recognition by the Minnesota legislature that such misconduct does in fact create a serious potential risk of physical injury to another.

Ultimately, the majority misses the mark by misconstruing and misapplying the recent case of <u>Begay v. United States</u>, _U.S._, 128 S.Ct. 1581 (2008) and the Eighth Circuit's subsequent application of <u>Begay</u> in <u>United States v. Gordon</u>, 557 F.3d 623 (8th Cir. 2009). <u>Begay</u> held that the "otherwise" clause in the definition of "violent felony" as used in the Armed Career Criminal Act , 18 U.S.C. sec. 924(e)(2)(B)(ii) -- a definition that is virtually identical to the definition of "crime of violence" in the Sentencing Guidelines -- "is not a catchall provision intended to reach every potentially dangerous prior offense." <u>Begay</u>, 128 S.Ct. at 1584-85. It is instead intended to cover only those crimes "roughly similar, in kind as well as in degree of risk posed, to the examples themselves," that is, to "burglary, arson, extortion and offenses involving the use of explosives." <u>Id.</u> at 1585. The <u>Begay</u> Court then explained and emphasized that "roughly similar" crimes are those that "typically involve purposeful, 'violent,' and 'aggressive' conduct." <u>Id.</u> at 1586. Applying these

-10-

rules, the Court held that a New Mexico state felony offense for driving under the influence of alcohol is not a "violent felony." Driving under the influence, the Court reasoned, is a strict liability crime, and "unlike the example crimes, the conduct for which the drunk driver is convicted . . . need not be purposeful or deliberate." Id. at 1587.

Thereafter, in United States v. Gordon, the Eighth Circuit applied the Begay rules to an altogether different crime, the Missouri offense of endangering the welfare of a child, which is committed, in pertinent part, by "knowingly act[ing] in a manner that created a substantial risk to the body or health of . . . a child less than seventeen years old." Gordon, 557 F.3d. This crime, the Court held, is not a "violent felony" because nothing in the statutory definition of the offense "suggests it 'typically involve[s]' violent and aggressive conduct . . . [r]ather, a person can create a substantial risk to a child's life, body or health through knowing actions that are neither violent nor aggressive, and this subsection is routinely applied to very passive behavior." Id. at 626.

Of course, the crimes in both Begay and Gordon are wholly dissimilar to the Minnesota offense of fleeing a peace officer by means of a motor vehicle. Unlike driving under the influence in Begay, which is a strict liability crime, to flee with the intent to elude a peace officer is, by definition, conduct that is purposeful. And unlike endangering the welfare of a child in Gordon, which typically involves passive conduct, to flee with the intent to elude a peace officer who has given a signal to stop necessarily is conduct that is aggressive. But in addition, the conduct is also violent in the sense that driving a motor vehicle at excessive speeds, or with headlights and taillights extinguished, or refusing to stop when directed, and with the "intent to attempt to elude a peace officer," will too often produce the violent result of a crash, or a person hit or run over, or a subsequent violent confrontation with police. Indeed, this is violent conduct that is "similar in kind as well as in degree of risk posed" to the violent conduct that is sometimes attendant to the commission of crimes of burglary, arson, extortion or explosives. And indeed, the risk of serious physical injury --

-11-

maiming or even loss of life -- is often greater where a motor vehicle collision is the source of the injury.

The substantial majority of the post-<u>Begay</u> cases are in accord in holding that the respective state offenses that they address for fleeing an officer by means of a vehicle -- all comparable to the Minnesota offense here -- are offenses that typically involve purposeful, violent and aggressive conduct, and thus are "violent felonies" under the ACCA. See, e.g., <u>United States v. Spells</u>, 537 F.3d 743 (7th Cir. 2008)(Indiana); <u>United States v. West</u>, 550 F.3d 952 (10th Cir. 2008)(Utah); <u>United States v. LaCasse</u>, 567 F.3d 763 (6th Cir. 2009)(Michigan); <u>United States v. Harrimon</u>, 568 F.3d 531 (5th Cir. 2009)(Texas).

Although the majority here concedes that the fleeing offense "typically involves purposeful conduct," it maintains that the definition of the offense "criminalizes conduct that is neither violent nor aggressive, such as merely 'extinguish[ing] motor vehicle headlights or taillights.'" The majority then concludes that, "We do not believe extinguishing one's headlights or taillights to avoid being pulled over by a police officer implies a propensity to act violently toward others." I first object to this analysis because it isolates only one of the several ways that the statute can be violated. This is in direct contravention of the Eighth Circuit's admonition in <u>Gordon</u>, itself, that where a statute "can be violated in a number of ways, we look to the charging papers for the limited purpose of determining the specific elements for which [the defendant] was convicted." <u>Gordon</u>, 557 F.3d at 625 (citing <u>United States v. Livingston</u>, 442 F.3d 1082, 1084 (8th Cir. 2006)). Here, the charging papers did not couch the offense in terms of extinguishing motor vehicle headlights or taillights, but instead charged defendant with driving at excessive speeds and disregarding traffic signals while police officers were in pursuit. Tellingly, the majority fails to address these other ways in which the statute can be violated.

Even if the majority was justified in cherry-picking that one part of the statute for its criticism, the analysis still doesn't hold. To be sure, extinguishing motor

-12-

vehicle headlights or taillights does not itself imply "propensity to act violently toward others," but it most certainly does so when coupled with the "intent to attempt to elude a peace officer following a signal given by the peace officer." The typical violator does not turn off the lights in order to slowly and stealthily sneak away from an officer who has just ordered him or her to stop, for in that scenario, he or she will likely be caught. The typical violator, instead, turns off the lights as one of several means to facilitate a getaway -- means that nearly always include the other specified elements of the statute -- increasing speed and refusing to stop -- not to mention the statute's unspecified "other means."

Finally, I have a fundamental disagreement with the majority's reasoning that "the elements of the statute do not require a confrontation, chase, or any other conduct indicating that the crime in question necessarily involves conduct presenting a serious risk of physical injury to another or conduct that is violent and aggressive," which is to say that the statute should have specified that its violation must have resulted in a confrontation, chase or other conduct in order to constitute a serious risk of physical injury to another or conduct that is violent and aggressive. Under Begay, however, the government need only prove that the specified statutory misconduct typically presents a serious potential risk of physical injury to another, and there is no requirement that the statute itself identify just how that risk obtains.

In sum, I would hold that the district court did not err in finding that the crime of fleeing a peace officer by means of a motor vehicle is a crime of violence as defined under the Sentencing Guidelines, and for that reason, I would affirm the judgment of the district court.

_____

-13-