**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued April 8, 2010
July 8, 2010

**Before**

KENNETH F. RIPPLE, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 09-2846

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District |
| *Plaintiff-Appellee*, | Court for the Western District of Wisconsin. |
| *v.* | |
| | No. 08 CR 170 |
| KENNETH ASKEW, | |
| *Defendant-Appellant*. | James T. Moody, *Judge*. |

**O R D E R**

The district court sentenced Kenneth Askew to 240 months' imprisonment for his convictions for possessing an unregistered sawed-off shotgun and possession of a firearm by a felon. The advisory Guidelines range associated with that sentence was based, in part, on the court's conclusion that Askew's previous felony conviction under Minnesota law for fleeing an officer in a motor vehicle is a crime of violence under the Guidelines. Askew appeals, claiming that conclusion was erroneous. We affirm.

I.

A jury convicted Kenneth Askew of possessing an unregistered sawed-off shotgun, 26 U.S.C. § 5861(d), and possessing a firearm as a felon, 18 U.S.C. § 922(g)(1). The presentence investigation report (PSR) set a base offense level of 26 under § 2K2.1(a)(1) of the Guidelines based on his two previous crime-of-violence felony convictions: one for burglary and kidnaping,[1] and the other for fleeing an officer in a motor vehicle in violation of Minnesota Statutes § 609.487 subdivision 3. The PSR calculated a total offense level of 32 and a criminal history category of VI, which resulted in an advisory Guidelines range of 210–240 months.[2]

Askew did not object to any portion of the PSR. At sentencing, the district court adopted the PSR's Guidelines calculations and sentenced him to 240 months' imprisonment. Askew appeals, arguing that the district court erred in concluding that his felony conviction for fleeing an officer in a motor vehicle qualifies as a crime of violence under the Guidelines.

II.

Our review of a district court's conclusion that a defendant's previous felony offense is a crime of violence under the Guidelines is ordinarily de novo. *United States v. Clinton*, 591 F.3d 968, 972 (7th Cir. 2010). Here, however, our review is only for plain error because Askew forfeited any objection to the district court's Guidelines calculations by failing to raise it below. *United States v. Macedo*, 406 F.3d 778, 789 (7th Cir. 2005). Under that standard, he must demonstrate there was (1) an error (2) that was plain (3) that affected his substantial rights. *United States v. Sawyer*, 521 F.3d 792, 796 (7th Cir. 2008). If he establishes these three things, we have discretion to correct the error if it "seriously affected the fairness, integrity or public reputation of judicial proceedings." *Id.* (quotation marks omitted).

---

[1] Because Askew was convicted of two felonies (burglary and kidnaping) that were contained in the same charging document and the sentences for those convictions were imposed on the same day, under §§ 4B1.2(c), 4B1.2, cmt. n. 3, and 4A1.2(a)(2) of the Guidelines, the sentences count as one prior sentence and the convictions thus count as one prior felony conviction.

[2] Although the usual Guidelines range for a total offense level of 32 and a criminal history category of VI is 210–262 months, the district court concluded that the top end of Askew's range is capped at 240 months by 18 U.S.C. § 924(a)(2) and 26 U.S.C. § 5871, which set 10-year statutory maximums for the offenses of conviction.

Under § 2K2.1(a)(1), a base offense level of 26 applies to Askew's offenses of conviction if he already has "at least two felony convictions of . . . a crime of violence." Askew does not dispute that his previous felony conviction for burglary and kidnaping was for a crime of violence. But he argues that his earlier felony conviction for fleeing from an officer in a motor vehicle does not qualify as a crime of violence.

Under § 2K2.1(a)(1), "crime of violence" has the meaning given that term in § 4B1.2(a).[3] U.S.S.G. § 2K2.1, cmt. n.1. According to § 4B1.2(a),

> [t]he term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

The Minnesota statute under which Askew was convicted provides that

> [w]hoever by means of a motor vehicle flees or attempts to flee a peace officer who is acting in the lawful discharge of an official duty, and the perpetrator knows or should reasonably know the same to be a peace officer, is guilty of a felony and may be sentenced to imprisonment for not more than three years and one day or to payment of a fine of not more than $5,000, or both.

Minn. Stat. § 609.487 subdv. 3. The definition of "flee" from § 609.487 subdivision 3 is provided by § 609.487 subdivision 1: "the term 'flee' means to increase speed, extinguish motor vehicle headlights or taillights, refuse to stop the vehicle, or use other means with intent to attempt to elude a peace officer following a signal given by any peace officer to the driver of a motor vehicle." Thus, to be convicted under Minnesota Statutes § 609.487 subdivision 3, a defendant must have used a motor vehicle intending to attempt to elude a person he knows (or reasonably should know) is a peace officer lawfully performing an official duty after a peace officer has signaled the driver of the motor vehicle.

A conviction under that statute is punishable by more than one year imprisonment, as § 4B1.2(a) requires. But the offense does not have as an element the use (or attempted or

---

[3] We interpret "crime of violence" from § 4B1.2(a) the same way as "violent felony" in 18 U.S.C. § 924(e), which is a part of the Armed Career Criminal Act. *United States v. Templeton*, 543 F.3d 378, 380 (7th Cir. 2008). We use these terms interchangeably in this opinion.

threatened use) of physical force against another person, § 4B1.2(a)(1), nor is it one of the enumerated offenses from § 4B1.2(a)(2). Therefore, in order to be considered a crime of violence, the offense must fit within the residual clause of § 4B1.2(a)(2): it must "otherwise involve[] conduct that presents a serious potential risk of physical injury to another."

To determine whether an offense comes within that residual clause, we employ a categorical approach, which means that we ordinarily "look only to the fact of conviction and the statutory definition of the prior offense" and do not consider the "particular facts disclosed by the record of conviction."[4] *James v. United States*, 550 U.S. 192, 202 (2007) (quotation marks and citations omitted); *accord United States v. Woods*, 576 F.3d 400, 403 (7th Cir. 2009). In other words, "we consider the offense generically, that is to say, we examine it in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." *Begay v. United States*, 553 U.S. 137, 141 (2008).

---

[4] We say "ordinarily" because in cases where the statute in question is "divisible"—*i.e.*, describes multiple offense categories, some of which would be crimes of violence and some that would not—we use a modified categorical approach. *E.g.*, *United States v. Dismuke*, 593 F.3d 582, 589 (7th Cir. 2010). Under that approach, a court can look to a limited set of materials to determine whether the defendant was convicted of a part of the statute that is a crime of violence. *Id.*

Assuming that Minnesota Statutes § 609.487 subdivision 3 describes multiple offense categories, it is not divisible. In effect, section 609.487 subdivision 3 proscribes any use of a motor vehicle with the intent to attempt to elude a person the perpetrator knows is a peace officer following an officer's signal to the driver of the vehicle. *See* Minn. Stat. § 609.487 subdv. 1 (defining "flee" as "to increase speed, extinguish motor vehicle headlights or taillights, refuse to stop the vehicle, or use other means with intent to attempt to elude a peace officer following a signal given by any peace officer to the driver of a motor vehicle."). We have previously concluded that all intentional flights against the command of a police officer are violent felonies, regardless of the manner or effects of fleeing. *Welch v. United States*, 604 F.3d 408, 423–25 (7th Cir. 2010). Therefore, and in light of our holding in this case, the Minnesota statute is not divisible because it does not describe any crimes that are not crimes of violence. *Cf. United States v. Sykes*, 598 F.3d 334, 339 (7th Cir. 2010) (noting indivisibility of Indiana's motor vehicle fleeing statute, which broadly proscribes "'knowingly or intentionally . . . flee[ing] from a law enforcement officer after the officer has . . . identified himself or herself and ordered the person to stop . . . and the person uses a vehicle to commit the offense'" (quoting Ind. Code § 35-44-3-3(b)(1)(A))).

The conduct covered by the statutory elements of the predicate offense must, in the typical case, be similar both in kind and in degree of risk posed as the conduct encompassed by the offenses listed in § 4B1.2(a)(2).  *Id.* at 143; *Dismuke*, 593 F.3d at 594.  In other words, the predicate crime must "(1) present a serious potential risk of physical injury similar in degree to the enumerated crimes of burglary, arson, extortion, or crimes involving the use of explosives; and (2) involve the same or similar kind of 'purposeful, violent, and aggressive' conduct as the enumerated crimes."  *Dismuke*, 593 F.3d at 591.

The first requirement is satisfied here.  In order to violate § 609.487 subdivision 3, a defendant must first receive a signal from an officer and then, flouting the officer's authority, use a motor vehicle with the intent of eluding the officer.  As we recently observed in *Dismuke* (relying on cases from three other circuits), such behavior presents a serious potential risk of physical injury because it "involves active defiance of a law-enforcement officer, initiates a pursuit, and typically culminates in a face-to-face confrontation between the officer and the suspect."  593 F.3d at 592 n.3 (citing *United States v. Young*, 580 F.3d 373, 377–78 (6th Cir. 2009); *United States v. Harrimon*, 568 F.3d 531, 536 (5th Cir. 2009); *United States v. West*, 550 F.3d 952, 969–71 (10th Cir. 2008)).

To be sure, the predicate offense in *Dismuke* was for a violation of Wisconsin Statute § 346.04(3), which proscribes fleeing an officer by means of increasing the speed of a motor vehicle, and Minnesota Statutes § 609.487 subdivision 3 is comparatively much broader in that it proscribes any means of fleeing a law-enforcement officer using a motor vehicle.  *See supra* n.4.  Nevertheless, the serious potential risk of physical injury posed by a typical violation of such a broad statute is sufficiently similar in degree as the enumerated offenses in § 4B1.2(a)(2) to be considered a crime of violence.

That conclusion parallels our recent holding in *Sykes*, where we held that an Indiana statute that, similarly, broadly proscribes "'knowingly or intentionally . . . flee[ing] from a law enforcement officer after the officer has . . . identified himself or herself and ordered the person to stop . . . and the person uses a vehicle to commit the offense'" was a violent felony.  598 F.3d at 339 (quoting Ind. Code § 35-44-3-3(b)(1)(A)).  In *Sykes*, we affirmed our holding to the same effect from *United States v. Spells*, 537 F.3d 743 (7th Cir. 2008), concerning the same Indiana statute.  *Id.* at 337.  Moreover, the Fifth and Sixth Circuits have reached like conclusions in cases involving motor vehicle fleeing statutes where "fleeing" is expansively defined.  *United States v. Rogers*, 594 F.3d 517, 520–21 (6th Cir. 2010) (Tenn. Code Ann. § 39-16-603(b)(1)); *Young*, 580 F.3d at 376 (Mich. Comp. Laws § 257.601a(1)); *Harrimon*, 568 F.3d at 533 n.2 (Tex. Penal Code Ann. § 38.04(a), (b)(1)).  We thus conclude that the typical violation of Minnesota Statutes § 609.487 subdivision 3 poses a serious potential risk of physical injury similar in degree to the crimes listed in § 4B1.2(a)(2).

We turn to the second requirement:  that the conduct encompassed by the predicate offense be similar in kind—*i.e.*, be purposeful, aggressive, and violent—as the conduct encompassed by the enumerated crimes.  Askew concedes that § 609.487 subdivision 3 is a purposeful offense.  (Supp. Br. at 7.)  And for good reason:  specific intent is an element of the crime.  Minn. Stat. § 609.487 subdv. 1 (defining "flee" as to use a motor vehicle "with intent to attempt to elude a peace officer"); *State v. Anderson*, 468 N.W.2d 345, 346 (Minn. Ct. App. 1991) ("The crime of fleeing a peace officer requires a specific intent to attempt to elude the officer." (citing Minn. Stat. § 609.487 subdv. 3)).  An intentional mental state satisfies the purposeful requirement.  *E.g.*, *Welch*, 604 F.3d at 418.

The typical violation of § 609.487 subdivision 3 also involves aggressive conduct.  An offender who flees from the presence of an officer who has signaled him draws attention to himself, challenges the officer's authority, and invites pursuit.  *Id.* at 424; *Spells*, 537 F.3d at 752 ("Taking flight calls the officer to give chase, and aside from any accompanying risk to pedestrians and other motorists, such flight dares the officer to needlessly endanger himself in pursuit.")  And as the Fifth Circuit has observed, "[t]his active defiance of an attempted stop or arrest is similar to the behavior underlying an escape from custody, which, as the Supreme Court noted in *Chambers*, is 'less passive' and 'more aggressive' than that likely underlying failure to report."  *Harrimon*, 568 F.3d at 535 (quoting *Chambers v. United States*, 129 S. Ct. 687, 691 (2008)); *accord Dismuke*, 593 F.3d at 595 (discussing *Chambers* and quoting *Harrimon*); *see also Welch*, 604 F.3d at 424.

Last, fleeing from an officer's presence by vehicle involves violent conduct in the run-of-the-mill case.  An offender's act of fleeing ordinarily leads to confrontation with the officer whose authority has been disregarded, an encounter often accompanied by risk of violence.  *Dismuke*, 593 F.3d at 595; *Harrimon*, 568 F.3d at 535.  Moreover, the use of a vehicle to accomplish that fleeing "involves violent force which the arresting officer must in some way overcome."  *Harrimon*, 568 F.3d at 535.  The eluding offender subjects to that force not only the pursuing officers, but also any other motorists and bystanders who may be present.  *Dismuke*, 593 F.3d at 595; *Harrimon*, 568 F.3d at 535; *West*, 550 F.3d at 970.  And just recently in *Welch*, we reaffirmed our view that an offender's purposeful decision to flee an officer in a motor vehicle after having been told to stop "'reflects that if that same individual were in possession of a firearm and asked to stop by the police, he would have a greater propensity to use that firearm in an effort to evade arrest.'"  604 F.3d at 425 (quoting *Spells*, 537 F.3d at 752).  For these reasons, we conclude that the conduct encompassed by Minnesota Statutes § 609.487 subdivision 3 is also similar in kind as the conduct encompassed by the specific crimes listed in § 4B1.2(a)(2).

III.

Having determined that a conviction under Minnesota Statutes § 609.487 subdivision 3 typically involves conduct that is similar both in kind and degree of risk posed as the conduct underlying the specific crimes listed in § 4B1.2(a)(2), we therefore hold that it qualifies as a crime of violence under the residual clause of § 4B1.2(a)(2).[5] Accordingly, the judgment of the district court is AFFIRMED.

---

[5] We recognize here, as we did in *Dismuke* and *Sykes*, that the Eighth and Eleventh Circuits see things differently when it comes to motor vehicle fleeing convictions. *United States v. Furqueron*, 605 F.3d 612 (8th Cir. 2010); *United States v. Johnson*, 601 F.3d 869 (8th Cir. 2010); *United States v. Tyler*, 580 F.3d 722 (8th Cir. 2009); *United States v. Harrison*, 558 F.3d 1280 (11th Cir. 2009). *Contra United States v. Hudson*, 577 F.3d 883 (8th Cir. 2009). In fact, in *Furqueron*, *Johnson*, and *Tyler*, the Eighth Circuit reached a different conclusion concerning the very Minnesota statute at issue here. Askew asks that we part company with the Fifth, Sixth, and Tenth Circuits and join the Eighth and Eleventh Circuits. We refused to do so in *Dismuke* and *Sykes*, and absent a convincing reason for doing so here, we decline the invitation again.